[No. S142508. Dec. 3, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
TRACY F. ALFORD, Defendant and Appellant.

COUNSEL

John F. Schuck, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Mary Jo Graves, Chief Assistant Attorneys General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit, Morris Lenk, Laurence K. Sullivan and Catherine A. Rivlin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CORRIGAN, J.**—Penal Code section 1465.8, subdivision (a)(1)[1] requires the imposition of a $20 court security fee "on every conviction for a criminal offense . . . ." The questions here are whether the fee is subject to section 3's general prohibition against retroactive application of a newly enacted law, and whether imposition of the fee for a crime committed before the effective date of the statute violates state and federal prohibitions against ex post facto laws. We hold that section 3 is not implicated and that the fee does not violate the prohibition against ex post facto laws.

FACTUAL AND PROCEDURAL BACKGROUND

On June 10, 2003, Tracy F. Alford (defendant) robbed a grocery store in Oakland. He was charged with second degree robbery and personal use of a firearm. Defendant was also alleged to have eight prior serious felony convictions.

On January 18, 2005, defendant was convicted of robbery, but not gun use. In a bifurcated jury trial, the prior convictions were found true.

Defendant was sentenced to prison for 40 years to life. The court also imposed the court security fee under section 1465.8, which took effect shortly after defendant committed the robbery, but before he was convicted. The Court of Appeal affirmed the judgment, including imposition of the court security fee. Here we consider only the fee's imposition.

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

Discussion

The court security fee is set out in section 1465.8, subdivision (a)(1) (section 1465.8(a)(1)), which provides in pertinent part: "To ensure and maintain adequate funding for court security, a fee of twenty dollars ($20) shall be imposed on every conviction for a criminal offense, including a traffic offense, except parking offenses as defined in subdivision (i) of Section 1463, involving a violation of a section of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code." Section 1465.8 was enacted as part of Assembly Bill No. 1759 (2003–2004 Reg. Sess.) (Assembly Bill 1759). (Stats. 2003, ch. 159, § 25.) It became operative on August 17, 2003, approximately two months after defendant robbed the grocery store. (Stats. 2003, ch. 159, §§ 25, 27.)[2] As explained in greater detail below, Assembly Bill 1759 was one of a number of trailer bills related to the 2003–2004 state budget.

*Penal Code section 3*

■ Defendant urges that imposition of the fee is barred because his criminal conduct occurred before the law's effective date. Defendant relies on section 3, which provides: "No part of [the Penal Code] is retroactive, *unless expressly so declared.*" (Italics added.) We have previously construed the statute to mean "[a] new statute is generally presumed to operate prospectively absent an express declaration of retroactivity or a clear and compelling implication that the Legislature intended otherwise. [Citation.]" (*People v. Hayes* (1989) 49 Cal.3d 1260, 1274 [265 Cal.Rptr. 132, 783 P.2d 719].)

■ As its own language makes clear, section 3 is not intended to be a "straitjacket." "Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent." (*In re Estrada* (1965)

---

[2] " 'The effective date [of a statute] is . . . the date upon which the statute came into being as an existing law.' [Citation.] '[T]he operative date is the date upon which the directives of the statute may be actually implemented.' [Citation.] Although the effective and operative dates of a statute are often the same, the Legislature may 'postpone the operation of certain statutes until a later time.' [Citation.]" (*Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 223 [105 Cal.Rptr.2d 407, 19 P.3d 1148].)

Assembly Bill 1759 became effective on August 2, 2003. According to Assembly Bill 1759, section 1465.8 was to become operative on the 15th day after the effective date of the bill, or on July 1, 2003, whichever was later, contingent on specified appropriations in the Budget Act of 2003. The Budget Act of 2003, which was effective on August 2, 2003, included these appropriations. Thus, section 1465.8 became operative on August 17, 2003. (See Stats. 2003, ch. 159, § 27.)

63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948].) Even without an express declaration, a statute may apply retroactively if there is " 'a clear and compelling implication' " that the Legislature intended such a result. (*People v. Grant* (1999) 20 Cal.4th 150, 157 [83 Cal.Rptr.2d 295, 973 P.2d 72] (*Grant*), quoting *People v. Hayes, supra,* 49 Cal.3d at p. 1274).)

■ Section 1465.8's legislative history supports the conclusion the Legislature intended to impose the court security fee to all convictions after its operative date.

The fee was projected to generate $34 million in revenue, and the Budget Act of 2003 reduced, by that same amount, support for the trial courts from the General Fund. (Assem. Com. on Budget, Enrolled Bill Rep. on Assem. Bill No. 1759 (2003–2004 Reg. Sess.) July 27, 2003, p. 7; Legis. Analyst, Rep. to Joint Legis. Budget Com., analysis of 2003–2004 Budget Bill, Assem. Bill No. 1759 (2003–2004 Reg. Sess.) p. 5.) We are persuaded that the Legislature necessarily anticipated the full realization of the $34 million to be generated by the court security fee during the budget year. This intent is clearly manifest in its action to reduce General Fund financing for the year by that concomitant amount. Imposing the court security fee only on defendants who committed a crime after section 1465.8 became operative would not have produced the needed revenue in the budget year. The income would only be realized at some future time as the cases wended their way through the system. The enactment of section 1465.8 as part of an urgency measure to implement the Budget Act of 2003 reveals the Legislature's intent to implement the directives of section 1465.8 immediately after it became operative. (Stats. 2003, ch. 159, § 29 ["In order to provide for changes to implement the Budget Act of 2003, it is necessary that this act take effect immediately"].)

■ Defendant argues that because section 1465.8 did not become operative on the same date it became effective, the Legislature could not have intended it to take effect immediately. We disagree. "[T]he postponement of the operative date of the legislation . . . does not mean that the Legislature intended to limit its application to transactions occurring after that date. [Citation.] . . . The Legislature may do so for reasons other than an intent to give the statute prospective effect. For example, the Legislature may delay the operation of a statute to allow 'persons and agencies affected by it to become aware of its existence and to comply with its terms.' [Citation.] In addition, the Legislature may wish 'to give lead time to the governmental authorities to establish machinery for the operation of or implementation of the new law.' [Citation.] A later operative date may also 'provide time for emergency clean-up amendments and the passage of interrelated legislation.' [Citation.] Finally, a later operative date may simply be 'a date of convenience . . . for bookkeeping, retirement or other reasons.' [Citation.]" (*Preston v. State Bd. of*

*Equalization, supra,* 25 Cal.4th at pp. 223–224.) This case is an example of how and why the Legislature uses delayed operation provisions. Section 1465.8 became operative only if certain other provisions of the Budget Act of 2003 were enacted. (Stats. 2003, ch. 159, § 27.) The $20 court security fee was just one of a number of surcharges implemented by the Legislature when it enacted Assembly Bill 1759. (*People v. Wallace* (2004) 120 Cal.App.4th 867, 875–876 [16 Cal.Rptr.3d 152].) Thus, it is understandable that the Legislature prudently delayed the operative date of section 1465.8 to ensure that the Budget Act of 2003 was enacted. The delayed operation also ensured that the courts were prepared to establish collection procedures for the fees. (*Preston v. State Bd. of Equalization, supra,* 25 Cal.4th at pp. 223–224.)

The legislative history of section 1465.8 makes clear that the Legislature intended the fee to operate as quickly as feasible, consistent with the overall goals of the Budget Act of 2003. Thus, we conclude that section 3 is not implicated in this case.

*The ex post facto prohibitions*

■    Article I, section 10, clause 1 of the federal Constitution and article I, section 9 of the state Constitution prohibit the passage of ex post facto laws. (*Grant, supra,* 20 Cal.4th at p. 158.) California's ex post facto law is analyzed in the same manner as the federal prohibition. (*Ibid.*) "[T]he ex post facto clauses of the state and federal Constitutions are 'aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." ' " (*Grant,* at p. 158, quoting *California Dept. of Corrections v. Morales* (1995) 514 U.S. 499, 504 [131 L.Ed.2d 588, 115 S.Ct. 1597].) ■    Here, the court security fee does not alter the definition of a crime; the question is whether it increases punishment. In making this determination we consider "whether the Legislature intended the provision to constitute punishment and, if not, whether the provision is so punitive in nature or effect that it must be found to constitute punishment despite the Legislature's contrary intent." (*People v. Castellanos* (1999) 21 Cal.4th 785, 795 [88 Cal.Rptr.2d 346, 982 P.2d 211].)

"If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is ' "so punitive either in purpose or effect as to negate [the State's] intention" to deem it "civil." ' [Citation.] Because we 'ordinarily defer to the legislature's stated intent,' [citation], ' "only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty,' [citations]." (*Smith v. Doe* (2003) 538 U.S. 84, 92 [155 L.Ed.2d 164, 123 S.Ct. 1140]; see also *People v. Castellanos, supra,* 21 Cal.4th at pp. 794–795.)

The legislative history demonstrates that the court security fee was enacted as part of an emergency budgetary measure for the nonpunitive purpose of funding court security. (*People v. Wallace, supra,* 120 Cal.App.4th at pp. 874–878.)[3] "The stated reason for enacting the $20 court security fee appears in section 1465.8, subdivision (a)(1), 'To ensure and maintain adequate funding for court security . . . .' The maintenance of 'adequate funding for court security' purposes is unambiguously a nonpunitive objective. Assembly Bill No. 1759 was one of 24 trailer bills which were part of a 'mechanism to implement critical provisions' of the fiscal year 2003–2004 state budget. (Assem. 3d reading analysis of Assem. Bill No. 1759, as introduced Mar. 11, 2003, p. 1.) The only expressed rationale for making Assembly Bill No. 1759 an urgency statute was a budgetary reason: 'In order to provide for changes to implement the Budget Act of 2003, it is necessary that this act take effect immediately.' (Stats. 2003, ch. 159, § 29.) Moreover, the $20 court security fee was imposed not merely upon persons convicted of [a] crime. Government Code section 69926.5, subdivision (a), which was adopted pursuant to section 19 of Assembly Bill No. 1759, required a $20 court security surcharge also be imposed on the first paper filed on behalf of a plaintiff or a defendant in any limited and unlimited civil action or special proceeding and in probate matters. (Stats. 2003, ch. 159, § 19; Gov. Code, §[§] 26820.4, 26826, 26827, 72055, 72056.) Moreover, section 1465.8, subdivision (a)(2) requires that the $20 surcharge be imposed when a traffic violation charge is *dismissed* because the alleged violator attends traffic school. Further, section 1465.8, subdivision (c) requires that the $20 court security fee be collected when bail is posted—a scenario which includes arrestees who will never be charged in an information, indictment, or complaint with a crime. Additionally, section 1465.8 could only go into effect if specified levels of trial court funding were enacted by the Legislature. (Stats. 2003, ch. 159, § 27.) Although it conceivably could happen, it is difficult to divine a punitive purpose for a fee that would go into effect only if specified trial court funding levels ($2,186,864,000 'or more' for item 0450-101-0932 and $1,001,001,000 'or more' for item 0450-111-0001 in the 2003 Budget Act) were enacted. (*Ibid.*)" (*Wallace, supra,* 120 Cal.App.4th at pp. 875–876.)

■ The Legislature generally does not adopt punitive statutes that are dependent on "trial court funding levels in budget line items." (*People v.*

---

[3] *Wallace* also provides an extensive list of the statutory changes contained in Assembly Bill 1759 that support the conclusion that the court security fee was enacted as part of a budget measure. In addition to imposing the $20 court security fee, these changes included, inter alia: "increases in fees under specified circumstances in small claims actions (Code Civ. Proc., § 116.230; Stats. 2003, ch. 159, §§ 1–2); imposing new costs for issuance of documents relative to the enforcement of small claims judgments (Code Civ. Proc., § 116.820; Stats. 2003, ch. 159, § 3) . . . increased filing fees in civil actions (Gov. Code, § 26826.4; Stats. 2003, ch. 159, § 8); increased fees in probate actions (Gov. Code, § 26827; Stats. 2003, ch. 159, §§ 9–10." (*People v. Wallace, supra,* 120 Cal.App.4th at p. 872.)

*Wallace, supra,* 120 Cal.App.4th at p. 876.) The Legislature also referred to the $20 amount due upon conviction by a nonpunitive term, labeling it as a "fee" and not a "fine." (*Ibid.*) Considering these factors in conjunction with the express legislative purpose of "maintain[ing] adequate funding for court security" (§ 1465.8(a)(1)), the *Wallace* court concluded the fee was imposed for a nonpunitive purpose. (*Wallace,* at p. 876.) Because the legislative intent is clear, the analysis is correct.[4]

■ The court security fee is not so punitive in nature or effect that it constitutes punishment. The United States Supreme Court has articulated certain nonexclusive factors governing this determination. "The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." (*Smith v. Doe, supra,* 538 U.S. at p. 97; see also *Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144, 168–169 [9 L.Ed.2d 644, 83 S.Ct. 554].) Only the "clearest proof" will suffice to override the Legislature's intent and transform a civil remedy into a criminal punishment. (*People v. Wallace, supra,* 120 Cal.App.4th at p. 876.) We conclude the fee is not so punitive as to override the Legislature's express intent.

■ Fines arising from convictions are generally considered punishment. (*People v. Wallace, supra,* 120 Cal.App.4th at p. 877.) However, several

---

[4] Defendant notes that Government Code section 69926.5, which is cited in *People v. Wallace, supra,* 120 Cal.App.4th 867, was repealed by its own terms, operative January 1, 2006. (See Stats. 2005, ch. 75, § 115.) Defendant urges the $20 court security fee now only applies to criminal actions and thus reflects the Legislature's intent that the fee is punitive in nature. This argument fails.

Government Code section 69926.5 was amended (and repealed by its own terms) as part of Assembly Bill No. 145 (2005–2006 Reg. Sess.) which became operative on January 1, 2006. However, the Legislature simply replaced this statute with a "uniform civil fee structure." (Stats. 2005, ch. 75, § 1, subds. (d), (e).)

The uniform civil fee structure was created to, "establish a uniform schedule of filing fees and other civil fees for the superior courts. Among other things, [Assembly Bill No. 145] would generally increase the filing fees for civil actions and proceedings, including, but not limited to, those fees related to small claims court, motions, appeals, judgments, the filing of the first paper in a civil action or proceeding in the superior court, in a limited civil case, and in complex cases, and in family law and probate matters, and fees for various certifications, recordings, filings, and the authentication of documents." (Leg. Counsel's Dig., Assem. Bill No. 145 (2005–2006 Reg. Sess.).) The Legislature acted to "streamline and simplify civil fees, provide for uniformity in different counties, address the funding shortfall occurring under the current fee structure, and significantly improve financial stability, accountability, and predictability in the courts." (Stats. 2005, ch. 75, § 1, subd. (d).) Thus, the legislative changes were made to increase efficiency in how civil fees were imposed, and there is no indication that there was a change in the Legislature's intent with respect to section 1465.8.

countervailing considerations undermine a punitive characterization. The purpose of the court security fee was not to punish but to ensure adequate funding for court security. (*Ibid.*) The fee is not imposed only in a criminal context. "[T]he same fee is imposed in limited and unlimited civil and probate cases as well." (*Ibid.*) Finally, whether or not the fee provision became effective was completely dependent on the funding of other budget line items. (*Ibid.*)

█ Whether the court security fee imposes an affirmative disability or restraint depends on how the challenged statute affects those subject to it. "If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." (*Smith v. Doe, supra,* 538 U.S. at p. 100.) A $20 fee is relatively small, and less onerous than other consequences that have been held to be nonpunitive.

For example, in holding that Alaska's sex offender registration act was not punitive, the high court stated, "The Act imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint. [Citation.] The Act's obligations are less harsh than the sanctions of occupational debarment, which we have held to be nonpunitive. [Citations.]" (*Smith v. Doe, supra,* 538 U.S. at p. 100.) We have likewise held California's sex offender registration requirement and the compelled submission of convicted felons to AIDS testing[5] to be nonpunitive for ex post facto purposes. (*People v. Castellanos, supra,* 21 Cal.4th 785, 799 [sex offender registration]; *People v. McVickers* (1992) 4 Cal.4th 81, 90 [13 Cal.Rptr.2d 850, 840 P.2d 955] [submission to AIDS testing].) The impact of the $20 fee is minimal in comparison to these registration and testing requirements.[6] Other examples of far more onerous postcrime disabilities that have survived ex post facto challenges include allowing the relaxation of procedures used to find juvenile probation violations (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 171–186 [14 Cal.Rptr.3d 261, 91 P.3d 205]), the denial of rehabilitation and pardon applications to sex offenders (*People v. Ansell* (2001) 25 Cal.4th 868, 883–893 [108 Cal.Rptr.2d 145, 24 P.3d 1174]), and the postprison commitment of an individual as a sexually violent predator (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1170–1179 [81 Cal.Rptr.2d 492, 969 P.2d 584]). In *People v. Rivera* (1998) 65 Cal.App.4th 705, 707–711 [76 Cal.Rptr.2d 703] the court concluded a "jail booking fee" of $135 and "jail classification fee" of $33 were not properly classified as

---

[5] See section 1202.1.

[6] Defendant cites *People v. Schoeb* (2005) 132 Cal.App.4th 861, 865–866 [33 Cal.Rptr.3d 889] where the court held that section 1465.8 requires imposition of the $20 fee for each count for which a defendant is convicted. He argues that the $20 fee is thus punitive because the amount collected could become substantial. That defendant may choose to commit a number of crimes does not change the fact that the $20 fee in connection with each is small.

punishment. Thus we conclude that the fee at issue here does not impose an affirmative disability or restraint for the purposes of our ex post facto analysis.

We look next to whether the court security fee promotes the traditional aims of punishment: retribution or deterrence. (See *People v. Castellanos, supra,* 21 Cal.4th at p. 804 (conc. & dis. opn. of Kennard, J.).) The stated purpose of the court security fee is "[t]o ensure and maintain adequate funding for court security . . . ." (§ 1465.8(a)(1).) As originally enacted, the fee was "part of an extensive statutory scheme applicable to both criminal and specified civil cases designed to fund and coordinate court security . . . ." (*People v. Wallace, supra,* 120 Cal.App.4th at p. 878.) It promotes court safety, not punishment and retribution. (*Ibid.*) In addition, the amount of the fee is not dependent on the seriousness of the offense. Thus, it does not meet the objectives of punishment and is distinguishable from a fine. Indeed, the same fee is imposed in unlimited civil and probate cases. Finally, federal and state ex post facto protections serve to ensure a "fair warning" of the consequences of violating penal statutes. (*Weaver v. Graham* (1981) 450 U.S. 24, 28 [67 L.Ed.2d 17, 101 S.Ct. 960]; *Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1171.) It is inconceivable that defendant would have decided not to commit his crime had he known in advance that this $20 fee would be imposed in addition to his 40-year-to-life sentence. The fee is also rationally related to its nonpunitive purpose security goal. (*People v. Wallace, supra,* 120 Cal.App.4th at p. 878.)

The $20 fee is not excessive and imposes no physical restraint. It "furthers the purpose of section 1465.8, subdivision (a)(1) which, as part of Assembly Bill No. 1759, [ensures] appropriate funding levels for court operations and providing a more rational process for planning court security." (*People v. Wallace, supra,* 120 Cal.App.4th at p. 878.)

In light of these factors and the Legislature's express intent, imposition of the fine serves a nonpunitive purpose. (*Smith v. Doe, supra,* 538 U.S. at p. 92.) Accordingly, it does not violate either federal or state prohibitions against ex post facto statutes. (Accord, *People v. Wallace, supra,* 120 Cal.App.4th at p. 878.)

DISPOSITION

We affirm the Court of Appeal's judgment.

George, C. J., Kennard, J., Baxter, J., and Chin, J., concurred.

**WERDEGAR, J.,** Dissenting.—The $20 at issue in this case, which defendant was ordered to pay as a court security fee pursuant to Penal Code[1] section 1465.8, subdivision (a)(1), is by any measure a trivial amount for the California Supreme Court to consider. But it is sometimes from such minutiae that legal problems arise. We require our government to turn square corners, even when a paltry few dollars are at stake. So it is here. Because the retroactive application of the security fee law violates defendant's statutory right to be free of the retroactive application of the laws, I dissent.

Section 3 provides both the beginning and the end of the analysis. Since 1872, that section has provided that "[n]o part of [the Penal Code] is retroactive, unless expressly so declared." This statutory language is clear and unequivocal and applies to all provisions of the Penal Code whether or not they impose a punitive or nonpunitive sanction. Because section 1465.8, subdivision (a)(1) does not expressly declare that it is retroactive, our work should be at an end.

As the majority explains, however, we must dig a little deeper. In *In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948], we found the single sentence in section 3 "simply embodies the general rule of construction, coming to us from the common law, that when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively. That rule of construction, however, is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent."

Later, in *People v. Hayes* (1989) 49 Cal.3d 1260, 1274 [265 Cal.Rptr. 132, 783 P.2d 719], we held that section 3 means that "[a] new statute is generally presumed to operate prospectively absent an express declaration of retroactivity *or a clear and compelling implication* that the Legislature intended otherwise." (Italics added; cf. *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208–1209 [246 Cal.Rptr. 629, 753 P.2d 585] ["California continues to adhere to the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively *unless it is very clear from extrinsic sources* that the Legislature or the voters must have intended a retroactive application" (italics added)].)

---

[1] All statutory references are to this code.

The interpretive gloss these cases place on the otherwise clear language of section 3 seems unnecessary and possibly incorrect, but the Legislature can rectify the situation should it so choose. Assuming (as I do) that those cases correctly interpret section 3, I nevertheless conclude section 1465.8, subdivision (a)(1) cannot be applied retroactively to defendant because no clear and convincing extrinsic evidence demonstrates the Legislature intended to apply the $20 security fee to those, like defendant, who committed their crimes before the law became effective.

Although the majority purports to find such evidence in the facts that the Legislature intended the fee to close a budget shortfall, that the money raised would replace money removed from judicial branch coffers, and that the law was passed as an urgency measure, this extrinsic evidence shows merely that the Legislature *may have* intended to apply section 1465.8, subdivision (a)(1) retroactively. I cannot, however, conclude it proves the Legislature intended a retroactive application by *clear and convincing evidence*. There is, for example, no clear statement in the legislative history that the Legislature intended the law to apply retroactively or that it considered for one moment the temporal difference between the date of the crime and the date of the eventual conviction. Moreover, that the Legislature desired to raise money quickly does not mean it desired to do so in the fastest way possible, contravening normal assumptions that new statutes apply prospectively only. The parties identify no legislative analysis of the amount of money that would have been lost if the law was applied prospectively only, or whether the amount lost by a prospective application would be of such an amount that it would seriously undermine the Legislature's intended goal of funding court security. In short, while one can certainly speculate that the Legislature, had it considered the point, *may have* desired retroactive application of the security fee law, the evidence fails to satisfy the high standard that there exist *clear and convincing* evidence the Legislature intended a retroactive effect.

In sum, because section 1465.8, subdivision (a)(1) does not expressly declare that it is retroactive (as required by section 3), and because no clear and convincing evidence demonstrates the Legislature intended that the law apply retroactively, section 1465.8, subdivision (a)(1) cannot be applied to defendant. Because this statutory analysis disposes of the case, it is unnecessary to address the constitutional ex post facto issue. (See *People v. Brown* (2003) 31 Cal.4th 518, 534 [3 Cal.Rptr.3d 145, 73 P.3d 1137] [a court should not entertain constitutional claims unless necessary to dispose of a case]; *People v. Reyes* (1998) 19 Cal.4th 743, 767 [80 Cal.Rptr.2d 734, 968 P.2d 445] (conc. & dis. opn. of Werdegar, J.) [same].)

Because the majority holds otherwise, I dissent.

Moreno, J., concurred.