[No. E048655. Fourth Dist., Div. Two. Sept. 15, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
SILVANO ANGEL LOPEZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IIIA. and IIIC.

**COUNSEL**

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Theodore M. Cropley, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHLI, J.—**

I

INTRODUCTION

Defendant Silvano Angel Lopez attacked the victim—his daughter's mother—threatening her with a potato peeler and scissors. A jury convicted

defendant of three crimes: kidnapping (Pen. Code, § 207, subd. (a)); inflicting a corporal injury while personally using a deadly and dangerous weapon (Pen. Code, §§ 273.5, subd. (e)(1), 1192.7, subd. (c)(23), 12022, subd. (b)(1)); and making criminal threats while personally using a deadly and dangerous weapon (Pen. Code, §§ 422, 1192.7, subd. (c)(23), 12022, subd. (b)(1)). The court sentenced defendant to five years in prison and imposed various assessments and fines.

On appeal, defendant asserts three challenges.[1] He contends the court erred by refusing to allow two witnesses to testify about the victim's purported reputation for lying and making false accusations. He also protests the criminal conviction assessment (Gov. Code, § 70373) and the order prohibiting him from owning, possessing, or controlling any deadly weapon or related paraphernalia. Subject to correction of the abstract of judgment and the sentencing minute order, we affirm the judgment.

## II

## FACTUAL AND PROCEDURAL BACKGROUND

The victim testified that she became involved with defendant when she was 14 years old. They have a daughter. At the time of trial in 2009, the victim was 24 years old and the daughter was seven years old.

In July 2008, the victim had married another man but was pregnant by defendant. Five days before the subject events, the victim had an abortion without telling defendant.

On July 10, 2008, the victim dropped off their daughter at defendant's residence for visitation. When she called the house to confirm her daughter had arrived, defendant claimed the child was not there.

The victim panicked and returned immediately, screaming the daughter's name. Defendant appeared on the front porch and came toward the victim's car. He grabbed her by the hair, demanded oral sex, and ordered her out of the car. He called himself a demon and a monster who did not care about their child.

[1] Defendant has withdrawn his contentions about lesser included offenses and concurrent terms.

Defendant forced the victim into the house by her hair and her arm. In the kitchen, he pushed a potato peeler against her chest, claiming he was going to kill her with it. The victim denied that she threatened to kill herself using the potato peeler.

She escaped and he grabbed her again and pushed her hard, causing her to fall against a computer desk. He knelt on her with his knee in her crotch, applying pressure to her chest. He said he was going to kill her slowly. He pinched and slapped her and threatened to break her arm. She managed to crawl away and ran to the front door.

Outside he pushed her down again and knelt on her, screaming she was going to die. He grabbed a pair of scissors and held them against her chest, again threatening her with death.

When the daughter approached them and asked defendant to leave her mother alone, he dropped the scissors and ran away. An ambulance took her and the daughter to the hospital. The victim had sustained various injuries—soft tissue swelling, bruising, hair loss, and scratches.

The daughter testified she was present when defendant grabbed her mother and threatened her and said he was a demon and a monster. She saw him throw down the scissors.

When Deputy Sheriff Carrasco arrived on the scene, the victim was trying to get up with her daughter's help. The victim was breathless and could not speak. Her face was flushed and she was perspiring. She was bleeding slightly and some hair was torn away.

Deputy Carrasco interviewed the victim at the hospital. She said she had dropped off her daughter and when she returned to check on her, defendant confronted her and demanded oral copulation. He mentioned being a monster or a demon and he dragged her out of the car into the house, struggling with her in the kitchen and threatening to kill her slowly with a potato peeler. In the living room, he shoved her against a computer desk and she fell. Defendant prevented her from dialing 911. He jumped on her, held her down, slapped her, hit her, and pinched her breasts. He squeezed and twisted her arm. Outside the house, he armed himself with scissors and again threatened to kill her. He dropped the scissors when his daughter approached them. In contrast, defendant denied that anything had happened. He told Deputy Carrasco that he had only restrained the victim from hurting herself.

The victim also testified about past episodes of domestic violence in 2004 when defendant punched her in the head, kicked her, and threatened her with a knife. Other incidents caused her to call the police. Defendant pleaded guilty to abuse and harassment committed against the victim in January 2004 and August 2005.

Two female relatives of defendant—his sister and his stepniece—testified that the victim had behaved confrontationally toward defendant and pretended to be injured when the police responded. They claimed the victim frequently misrepresented what happened with defendant and with other people, including the victim's stepmother.

The victim was estranged from her father and her stepmother after her father pleaded guilty to identity theft for using her identity.

III

ANALYSIS

A. *The Victim's Credibility**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Government Code Section 70373*

Government Code section 70373 (section 70373) provides: "(a)(1) To ensure and maintain adequate funding for court facilities, an assessment shall be imposed on every conviction for a criminal offense . . . . The assessment shall be imposed in the amount of thirty dollars ($30) for each misdemeanor or felony . . . ." The effective date of the statute is January 1, 2009.

Defendant committed the subject crimes in July 2008. The jury convicted defendant in April 2009. As part of his sentence, the court imposed on defendant the $30 court facilities assessment. Defendant contends the assessment is unauthorized and must be stricken because the crimes occurred before section 70373's effective date. The issue is whether the statute applies when the crime was committed before the statute became effective.

Defendant relies on *People v. Tarris* (2009) 180 Cal.App.4th 612, 628 [103 Cal.Rptr.3d 278] (Fourth Dist., Div. Two), in which this court commented

*See footnote, *ante*, page 474.

summarily that "the trial court erred in assessing a court construction fee under Government Code section 70373 because the fee statute was not yet in effect at the time of sentencing." *Tarris* is factually distinguishable from the present case, in which the crime was committed in July 2008 before the statute became effective but defendant's conviction and sentencing occurred after the statute's effective date of January 2009.

Instead, the circumstances of the present case dictate that we follow the persuasive reasoning of the Third District Court of Appeal, and subsequent cases, that the date of conviction, not the date of the crime, controls application of the statute. Section 70373 can and does apply to crimes committed before its enactment. (*People v. Castillo* (2010) 182 Cal.App.4th 1410, 1413–1415 [106 Cal.Rptr.3d 688] [Third Dist.] (*Castillo*); *People v. Fleury* (2010) 182 Cal.App.4th 1486, 1492–1494 [106 Cal.Rptr.3d 722] [Third Dist.]; *People v. Davis* (2010) 185 Cal.App.4th 998, 1000–1001 [112 Cal.Rptr.3d 70] [Second Dist., Div. Four]; *People v. Phillips* (2010) 186 Cal.App.4th 475, 477–479 [111 Cal.Rptr.3d 575] [Fifth Dist.] (*Phillips*); *People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1111–1112 [1112 Cal.Rptr.3d 884] [Third Dist.].)

In discussing *Castillo* and *People v. Alford* (2007) 42 Cal.4th 749 [68 Cal.Rptr.3d 310, 171 P.3d 32] (*Alford*), the *Phillips* court compared the language of Penal Code section 1465.8 with Government Code section 70373: "The [*Alford*] court determined that the statute [(§ 1465.8)] did not violate ex post facto prohibitions because it served a nonpunitive purpose. The *Alford* court also determined that the Legislature intended Penal Code section 1465.8 to apply where the conviction occurred on or after the statute's effective date, regardless of when the crime occurred. (*Alford, supra*, at pp. 754–756.) In doing so, the court relied on the fact that Penal Code section 1465.8 was created by an urgency statute enacted as part of an emergency budgetary measure for the purpose of funding court security." (*Phillips, supra*, 186 Cal.App.4th at p. 478.)

The *Phillips* court agreed with *Castillo* "that it is the language of the statute that controls" and that the Legislature intended section 70373 to apply to convictions occurring after its effective date. (*Phillips, supra*, 186 Cal.App.4th at p. 478.) *Phillips* also agreed with *Castillo* that "the fact that section 70373 is part of a budgetary enactment [fn. omitted] supports application of the assessment to convictions regardless of the date of the underlying offense. (*People v. Castillo, supra*, 182 Cal.App.4th at pp. 1414–1415.) The assessment 'is but one component of a broader legislative scheme in which filing fees in civil, family, and probate cases were also

raised. [Citation.]' (*People v. Brooks* (2009) 175 Cal.App.4th Supp. 1, 4 [99 Cal.Rptr.3d 221] [§ 70373 does not violate ex post facto prohibitions].) Similarly, the court security fee considered in *Alford* was enacted as part of a larger budgetary measure. (*Alford, supra*, 42 Cal.4th at p. 754.)" (*Phillips*, at p. 479.) We see no compelling reason to reconsider the holdings in *Castillo, Phillips*, and their ilk.

Finally, we do not agree with defendant's strained interpretation that "[s]ubdivision (b) of section 70373 would be utterly and completely unnecessary if the assessment under subdivision (a) was not a fine, penalty or forfeiture." In our reading of the statute, subdivision (b) simply clarifies that the assessment is not punitive, unlike other kinds of penalties authorized by the Penal Code and the Government Code.

We conclude that the assessment is not punitive and was properly imposed by the court. We also direct the abstract of judgment and minute order be corrected to show the court ordered defendant to pay a $30 assessment for each of his three convictions, making the total assessment $90.

C. *Penal Code Section 12021, Subdivision (a)(1)*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

DISPOSITION

We affirm the judgment but order the trial court's May 29, 2009, sentencing order and the abstract of judgment be corrected to impose a $30 assessment for each of defendant's three felony convictions. We also order the sentencing order be modified by striking the prohibition against owning, possessing, or having under defendant's control "any deadly weapon or related paraphernalia" and instead, imposing a prohibition on ownership, possession, custody and control of a firearm. Finally, we order the confusing use of the word "concurrent" in the sentencing order be stricken.

---

[*]See footnote, *ante*, page 474.

The matter is remanded to the trial court with directions to modify defendant's abstract of judgment accordingly, and forward a copy of the revised abstract to the Department of Corrections and Rehabilitation.

Ramirez, P. J., and Miller, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 15, 2010, S187504.