Filed 3/11/14  P. v. Wilson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057263 |
| v. | (Super.Ct.No. SWF10001902) |
| KENNETH RAY WILSON, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dennis A. McConaghy, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Melissa Mandel and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Kenneth Ray Wilson had two step-daughters. From when the younger step-daughter (Jane Doe 4) was 11 or 12 until she was 14 or 15 — i.e., from about 1994 until about 1997 — defendant would frequently "grind" his lower body against hers. She "could feel his penis through his pants."

Defendant's older step-daughter had two daughters, Jane Doe 2 and Jane Doe 3. From about 2004 to 2006, when Doe 2 was between 7 and 9, defendant would "hump" her. Once, he put his penis in her vagina. Another time, he orally copulated her.

Defendant molested Doe 3 only once, around 2006, when she was 12; he rubbed his "private parts" on the side of her hip.

The younger step-daughter eventually had a daughter of her own, Jane Doe 1. Around 2009 or 2010, when Doe 1 was 8, defendant rubbed her vagina with his finger at least twice.

In 2010, Doe 4 wanted to encourage her nieces Doe 2 and Doe 3 to confide in her, so she told them how defendant had molested her. In response, Doe 2 disclosed that he had also molested her. Doe 4 then questioned her own daughter, Doe 1, who revealed that defendant had molested her, too. Finally, a few days later, Doe 3 disclosed to her mother that defendant had molested her. Doe 4 made a pretext phone call to defendant in which he admitted having molested her and her daughter.

Defendant denied molesting any of the girls. He claimed that, in the pretext call, he admitted Doe 4's accusations to try to mollify her and to avoid a confrontation.

A jury found defendant guilty of seven counts of a nonforcible lewd act on a child under 14 (Pen. Code, § 288, subd. (a)) and two counts of simple battery (Pen. Code, § 242). The jury also found that, for purposes of sentencing under the "One Strike Law," defendant committed sexual offenses against more than one victim. (Pen. Code, former § 667.61, subd. (e)(5); see now Pen. Code, § 667.61, subd. (e)(4).) As a result, defendant was sentenced to a total of 105 years to life in prison, along with the usual fines, fees, and conditions.

Defendant now contends:

1. The application of the One Strike Law to count 9 (a lewd act on Doe 4) is unconstitutionally ex post facto.

2. Count 9 was barred by the statute of limitations.

3. Counts 3 and 4 (simple battery) were barred by the statute of limitations.

4. The total sentence of 105 years to life constitutes unconstitutionally cruel and unusual punishment.

We find no error. Hence, we will affirm.

I

EX POST FACTO APPLICATION OF THE ONE STRIKE LAW TO COUNT 9

Defendant contends that the application of the One Strike Law to count 9 (a lewd act on Doe 4) has unconstitutionally ex post facto effect.

"Article I, section 10, clause 1 of the federal Constitution and article I, section 9 of the state Constitution prohibit the passage of ex post facto laws. [Citation.] California's

3

ex post facto law is analyzed in the same manner as the federal prohibition. [Citation.] '[T]he ex post facto clauses of the state and federal Constitutions are "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'"' [Citation.]" (*People v. Alford* (2007) 42 Cal.4th 749, 755.)

The One Strike Law was enacted on September 8, 1994. (Stats. 1993-94, 1st Ex. Sess., ch. 14, § 1, p. 8570.) It went into effect on November 30, 1994.[1] It provided — and it still provides — that a person who is found guilty of committing specified offenses, including a nonforcible lewd act on a child under 14, against more than one victim shall be sentenced to an indeterminate term of 15 years to life in prison. (Pen. Code, former § 667.61, subds. (b), (c)(7), (e)(5), Stats. 1993-94, 1st Ex. Sess., ch. 14, § 1, p. 8570; see now Pen. Code, § 667.61, subds. (b), (c)(8), (e)(4).)

Count 9 was allegedly committed "on or about 1994." Doe 4 was born in December 1982. She testified that defendant first started "grinding" on her when they lived in San Diego (i.e., outside the trial court's jurisdiction). The grinding continued after the family moved to Temecula in 1994, when she was in sixth grade. It happened "often," though Doe 4 admitted, "I don't remember exactly like if it was once a week or

---

**1** A bill that is enacted in extraordinary session and subsequently signed by the governor goes into effect 91 days after the adjournment of the extraordinary session. (Cal. Const., art. IV, § 8, subd. (c)(1).) The 1993-1994 Extraordinary Session adjourned on August 31, 1994. (Sen. Final History (1993–1994 Ex. Sess.) p. 1.) The 91st day after August 31, 1994 was November 30, 1994.

twice a week or once a month, but it happened several times. Like very often when he would ask for a hug, that's what he would do . . . ."

The grinding did not stop "until [Doe 4] was about 15 or close to 15." At that point, there was an incident in which she offered defendant money to drive her to Oceanside. He said, "You don't have to give me money, but you can give me something else." She realized that this was "crazy" and "wrong." She told her mother, in defendant's presence, about the molestation, and it stopped.

To summarize this evidence, it does not conclusively establish that the lewd touching in Riverside County *started* after November 30, 1994, when the One Strike Law came into effect; it could have started as early as September 1994, when Doe 4 started the sixth grade. However, it does conclusively establish that it *continued* after the One Strike Law came into effect. It was still going on when Doe 4 was "close to 15" (though it ceased to be a violation of Penal Code section 288 when Doe 4 turned 14, which occurred in December 1996).

Accordingly, what is critical is the standard of review. How do we review an ex post facto claim when the defendant has been convicted on a single count based on evidence of multiple lewd acts, some before and some after the relevant statute went into effect? This is complicated by the fact that defendant did not raise any ex post facto claim below, so the parties may not have had an incentive to develop the evidence relevant to this issue.

5

The leading case on the standard of review under these circumstances is *People v. Hiscox* (2006) 136 Cal.App.4th 253.

In *Hiscox*, the defendant was found guilty on 11 lewd act counts and was sentenced on each count pursuant to the One Strike Law. (*People v. Hiscox*, *supra*, 136 Cal.App.4th at p. 256.) The information alleged that each of the lewd acts took place sometime between 1992 and 1996. (Id. at p. 257.) The evidence did not indicate when the acts occurred, other than that they occurred between 1992 and 1996. (*Id*. at p. 258; see also *id*. at pp. 261-262.) The defendant raised an ex post facto claim for the first time on appeal. (*Id*. at pp. 256, 258}

Preliminarily, the appellate court held that the defendant had not forfeited the issue. (*People v. Hiscox*, *supra*, 136 Cal.App.4th at p. 259.) It explained that, while a defendant must object to preserve factual sentencing issues that could be resolved at sentencing, the defendant does not have to object to preserve factual sentencing issues that could be resolved at trial. (*Ibid*.)

The court then stated: "Since the jury was not asked to make findings on the time frame within which the offenses were committed, the verdicts cannot be deemed sufficient to establish the date of the offenses unless the evidence leaves no reasonable doubt that the underlying charges pertained to events occurring on or after November 30, 1994. [Citation.] It would be inappropriate for us to review the record and select among acts that occurred before and after that date, or to infer that certain acts probably occurred after that date. Hiscox has a constitutional right to be sentenced under the terms of the

6

laws in effect when he committed his offenses.  For a court to hypothesize which acts the jury may have based its verdicts on, or what dates might be attached to certain acts based on ambiguous evidence, would amount to 'judicial impingement upon the traditional role of the jury.' [Citation.]" (*People v. Hiscox*, *supra*, 136 Cal.App.4th at p. 261.)  "On this state of the evidence, it simply cannot be said the prosecutor succeeded in establishing that any particular offense was committed when section 667.61 was in effect." (*Id*. at p. 262.)

We may assume, without deciding, that *Hiscox* was correctly decided.[2]  Even if so, it is distinguishable.  Here, the evidence establishes beyond a reasonable doubt that the jury's guilty verdict did pertain to events after November 30, 1994.  Doe 4 testified that the molestation occurred repeatedly.  She did not distinguish between the incidents. Defendant simply denied that they occurred; he did not present any different defenses to some than to others.  Thus, the jury was presented with an "all or nothing" proposition — it had to believe Doe 4 and conclude that all of the molestations occurred, or believe defendant and conclude that none of them did.  As it found defendant guilty, it

---

[2]        It could be argued — as the People did argue in *Hiscox* (*People v. Hiscox*, *supra*, 136 Cal.App.4th at pp. 258-259) — that an ex post facto issue cannot be raised for the first time on appeal if it turns on factual issues that could have been resolved at trial. If that is the law, then here, defendant has forfeited the issue.

It could also be argued that, when a defendant did not raise the issue below and did not demand a jury finding on when the crime occurred, the defendant cannot show that there was an ex post facto violation unless there is no substantial evidence that the crime occurred after the statute's effective date.  If that is the law, then here, defendant cannot show error.

necessarily must have concluded that he committed all of the molestations, including the ones after November 30, 1994.

We therefore conclude that sentencing defendant under the One Strike Law on count 9 did not violate ex post facto principles.

II

THE STATUTE OF LIMITATIONS ON COUNT 9

Defendant contends that count 9 (a lewd act on Doe 4) was barred by the statute of limitations.

At trial, defense counsel made a motion for acquittal (Pen. Code, § 1118.1) on count 9, based on the statute of limitations. The trial court denied the motion.

Under Penal Code section 799, there is no limitations period for "an offense punishable by death or by imprisonment in the state prison for life"; a prosecution for such an offense "may be commenced at any time." Here, as we held in part I, *ante*, the One Strike Law could constitutionally be applied to count 9; thus, defendant was properly sentenced to 15 years to life on this count. It necessarily follows that this count was not time-barred. (*People v. Perez* (2010) 182 Cal.App.4th 231, 236-242 [One Strike Law "is an alternate penalty scheme . . . . Thus, the unlimited time frame for prosecution set out in section 799 . . . applies."].)

THE STATUTE OF LIMITATIONS ON COUNTS 3 AND 4

Defendant contends that his convictions on counts 3 and 4 for simple battery were barred by the statute of limitations.

A.    *Additional Factual and Procedural Background.*

Originally, count 3 charged aggravated sexual assault on a child.  (Pen. Code, § 289.)  Count 4 charged sexual intercourse or sodomy with a child 10 or younger.  (Pen. Code, § 288.7, subd. (a).)  At defense counsel's request, the jury was instructed on simple battery and that simple battery was a lesser included offense with respect to both counts. Ultimately, the jury found defendant not guilty of the charged greater offenses but guilty of simple battery.

B.    *Analysis.*

It has been held that "a defendant forfeits the right to complain on appeal of conviction of a time-barred lesser included offense where the charged offense was not time-barred and the defendant either requested or acquiesced in the giving of instructions on the lesser offense."  (*People v. Stanfill* (1999) 76 Cal.App.4th 1137, 1150.)

"Without a rule that acquiescence or failure to object acts as a forfeiture, the defendant may remain quiet about a limitations problem, avoid the ritual of formal waiver and then, as an ace up his sleeve, secure reversal on the theory that he never expressly waived.  This is an unconscionable result that calls for a forfeiture rule.  Beyond removing the incentive for gamesmanship, 'requiring a defendant to raise a statute of

limitations issue in the trial court . . . would encourage the parties to focus on the issue at that level, where it can be fully explored and an adequate record developed.' [Citation.] We would also prevent surprise and prejudice to the prosecution.  Because lesser included offenses are not charged in the accusatory pleading, '. . . there is no reason for the prosecution to include discovery or tolling allegations as to those offenses. [Citations.]' [Citation.]  Raising the issue in the trial court would allow an opportunity to amend the accusatory pleading to rectify those situations where tolling provisions might apply to the lesser offense.  [Citations.]  Finally, proper resolution of the issue in the trial court would, of course, remove any need for an appeal, reversal and retrial on that issue, a delay that could prejudice both parties by fostering stale evidence and dull memories [citation] — paradoxically, the key reasons for having a statute of limitations in the first place." (*People v. Stanfill*, *supra*, 76 Cal.App.4th at pp. 1148-1149.)

Here, defense counsel affirmatively requested instructions on the lesser offenses. Accordingly, she forfeited any contention that the lesser offenses were time-barred.

IV

CRUEL AND UNUSUAL PUNISHMENT

Defendant contends that his total sentence of 105 years to life constitutes unconstitutionally cruel and unusual punishment.  He relies on the late Justice Mosk's view — expressed repeatedly in concurring opinions (*People v. Deloza* (1998) 18 Cal.4th 585, 600-602 [conc. opn. of Mosk, J.]), dissenting opinions (*People v. Hicks* (1993) 6 Cal.4th 784, 797 [dis. opn. of Mosk, J.]), and law review articles (Mosk, Nothing

10

Succeeds Like Excess (1993) 26 Loy. L.A. L.Rev. 981) — that a term of years that is impossible for a human being to serve constitutes cruel and unusual punishment. In Justice Mosk's view, "The maximum sentence that should be imposed is one a defendant is able to serve: life imprisonment." (*People v. Deloza*, *supra*, 18 Cal.4th at p. 602 [conc. opn. of Mosk, J.].)

Justice Mosk's statements are the "voice of one crying in the wilderness" (Mark 1:3, Bible, King James Version); they have "no precedential value." (*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383.) In any event, defendant was not sentenced to a determinate term of years; rather, he was sentenced to an indeterminate term of 105 years *to* life. Even Justice Mosk acknowledged that a life term is not per se unconstitutional.

Defendant does not argue that the sentence was disproportionate to the offense or to the offender. Accordingly, we need not and we do not address this issue.

V

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

KING
J.

MILLER
J.

11