Filed 5/3/16  P. v. Ward CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>ANDREW J. WARD,<br><br>          Defendant and Appellant. | A144489<br><br>(San Francisco City and County<br>Super. Ct. No. 222926) |

Andrew J. Ward was convicted of violating a pretrial emergency domestic violence protective order.  At sentencing, the court imposed a postjudgment criminal protective order under the authority of Penal Code section 136.2, subdivision (i)(1) (section 136.2(i)(1)).[1]  Ward challenges the order, contending that he was not convicted of a domestic violence offense as required by the statute.  We affirm, concluding the court properly relied on the statute's definition of domestic violence at the time of sentencing and reasonably found that Ward's offense was a crime involving domestic violence as so defined.

## I.  BACKGROUND

Maria T. is Ward's ex-girlfriend.  Ward and Maria began a dating relationship in about November 2013, and Ward stayed with Maria in her apartment and shared her cell phone from about December 2013 to February 2014.  Their relationship soured, and they engaged in many fights, breakups, and reunions.  After one confrontation, Ward decided

---

[1] Undesignated statutory references are to the Penal Code.

to end the relationship and stayed elsewhere. In early March, he told Maria he wanted to return to collect his belongings. On March 6, 2014, he entered the apartment while Maria was in the shower. When she encountered him, they argued and struggled over Maria's cellphone. Ward grabbed and shook Maria, took the phone, and left the apartment. He was arrested soon thereafter and taken to the hospital after he had what appeared to be a seizure. While Ward was in the hospital, police served him with an emergency protective order that prohibited him from contacting Maria. After Ward was booked into jail, he called Maria twice during the afternoon of March 6, 2014. During the calls, which were recorded by the jail, he asked Maria to make phone calls for him and to drop the charges against him.

Ward was charged by first amended information with the felony first degree residential robbery and burglary of Maria's home (§§ 211, 459); misdemeanor battery and corporal injury on Maria, a cohabitant (§§ 243, subd. (e)(1), 273.5, subd. (a)); misdemeanor violations of a domestic relations court order on March 6 and May 2 (§ 273.6, subd. (a)); misdemeanor aggravated trespass of Maria's home (§ 602.5, subd. (b)); and misdemeanor battery on a different woman (§ 242). The charge relating to a May 2 violation of a court order was dismissed by the prosecution before trial. A jury found Ward guilty of disobeying a domestic relations court order on March 6 and not guilty of all remaining charges.

On March 3, 2015, at the prosecution's request, the court issued a criminal protective order that required Ward to stay away from Maria and her home and barred him from possessing firearms during the order's five-year term. The court sentenced Ward to one year in county jail, with one-half time credits pursuant to section 4019 and 239 days of credit for time served, leaving no additional time to be served.

## II. DISCUSSION

Ward argues that the court lacked the legal authority to issue the postjudgment protective order in this case. We disagree and affirm the order.

The order was issued on Judicial Council Forms, form CR-160, which is entitled, "Criminal Protective Order—Domestic Violence." The court checked two boxes on the

2

form for the applicable legal authority:  a box for section 273.5, subdivision (j) and a box for section 136.2(i)(1).  Section 273.5, subdivision (j) authorizes a court to issue a postjudgment protective order "[u]pon conviction under subdivision (a)," which provides that any person who "willfully inflicts corporal injury resulting in a traumatic condition upon a [spouse, cohabitant, dating partner, or coparent] is guilty of a felony."  (§ 273.5, subds. (a); *id.*, subd. (b).)  Because Ward was not convicted of violating section 273.5, subdivision (a), Ward correctly argues that the court lacked authority under section 273.5, subdivision (j) to impose the postjudgment protective order.  Therefore, the sole question before us is whether the order was authorized by section 136.2(i)(1), which requires that we determine which version of section 136.2(i)(1) to apply—the version in effect at the time Ward committed his offense or the version in effect at the time the protective order was imposed.

As relevant here, the statute in effect at the time of Ward's offense applied to persons convicted of a crime involving domestic violence as defined in section 13700.  (Former § 136.2(i)(1), as amended by Stats. 2013, ch. 291, § 1.)  Section 13700 defines domestic violence to include abuse committed against a current or former cohabitant and defines "abuse" as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another."  (§ 13700, subds. (a), (b).)  The People argue the trial court could have reasonably found Ward's telephone calls to Maria placed her "in reasonable apprehension of imminent serious bodily injury" within the meaning of section 13700, subdivision (a).  As discussed *post*, the People presented a different argument in the trial court, and the court apparently made no such finding.  The record reflects no threats made by Ward in the phone calls.  Since Ward was in custody at the time, he was scarcely in a position to inflict "imminent" bodily injury.  On the record before us, we do not believe the conduct which formed the basis for Ward's conviction was domestic violence as defined by section 136.2(i)(1) at the time of his offense.

By the time the order was imposed, the definition of domestic violence under section 136.2(i)(1) had been expanded to authorize postjudgment protective orders "[i]n

3

all cases in which a criminal defendant has been convicted of a crime involving domestic violence as defined in Section 13700 *or in Section 6211 of the Family Code*." (§ 136.2(i)(1), italics added; see Stats. 2014, ch. 673, § 1.3.)[2] As relevant here, Family Code section 6211, subdivision (b) defines " 'domestic violence' " as "abuse perpetrated against" a current or former cohabitant. Family Code section 6203, subdivision (a)(4) further defines " 'abuse' " to include "any behavior that has been or could be enjoined pursuant to Section 6320." Family Code section 6320, subdivision (a), authorizes a court to enjoin "telephoning, . . . [and] contacting, either directly or indirectly" a protected person. Because Ward indisputably was convicted of telephoning Maria at a time when she was protected by an order prohibiting such contact, he was "convicted of a crime involving domestic violence" as defined by section 136.2(i)(1) at the time of sentencing.

The prosecutor expressly argued at sentencing that "domestic violence" as used in section 136.2(i)(1) included domestic violence as defined in Family Code section 6211, which in turn incorporated the definition of abuse in Family Code section 6320 and included "telephoning, . . . [and] contacting directly or indirectly." Ward did not assert that the expanded definition of section 136.2(i)(1) in effect at the time of sentencing was inapplicable, but contended that a protective order was unwarranted because he did not threaten, harass or annoy Maria during the phone calls. The trial court impliedly relied on the expanded definition of domestic violence when it imposed the order on the ground that Ward had committed a "blatant and flagrant" violation of the emergency protective order by calling Maria from jail but made no finding that Ward had placed Maria "in reasonable apprehension of imminent serious bodily injury" by making the calls.

Ward argues on appeal that the five-year protective order was not authorized by the version of section 136.2(i)(1) in effect at the time he committed his offense. We requested supplemental briefing on the question of which version of the statute should

---

[2] A subsequent amendment to section 136(i)(1) is immaterial to the question before us. (See Stats. 2015, ch. 60, § 1.) The statute's definition of domestic violence has remained unchanged since the time of Ward's sentencing. (§ 13700, subd. (b); Fam. Code, §§ 6203, 6211, 6320.)

have been applied at the time of Ward's sentencing. Specifically, we asked the parties to brief whether imposing the protective order pursuant to the version of section 136.2(i)(1) in effect at the time of sentencing violated the ex post facto clause of the United States and California Constitutions. We now hold that section 136.2(i)(1)'s definition of domestic violence at the time of Ward's sentencing was properly applied and that doing so did not violate ex post facto principles.

"[T]he ex post facto clauses of the state and federal Constitutions are 'aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." ' " (*People v. Grant* (1999) 20 Cal.4th 150, 158.) The expanded definition of domestic violence in section 136.2(i)(1) did not alter the definition of Ward's crime. In determining whether it increased the punishment for the crime, "we consider 'whether the Legislature intended the provision to constitute punishment and, if not, whether the provision is so punitive in nature or effect that it must be found to constitute punishment despite the Legislature's contrary intent.' [Citation.] [¶] 'If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " [Citation.] Because we "ordinarily defer to the legislature's stated intent," [citation], " 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." ' " (*People v. Alford* (2007) 42 Cal.4th 749, 755.)

Section 136.2(i)(1)—including the version in effect at the time Ward committed his offense—expressly sets forth its legislative intent: "It is the intent of the Legislature in enacting this subdivision that the duration of any restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family." It is apparent that section 136.2(i)(1) was enacted for the purpose of victim protection, a nonpunitive intention. Thus, the issue is whether the statute is so punitive in nature or effect that it must be found to constitute punishment.

5

We see nothing in section 136.2(i)(1) suggesting that it is generally punitive in nature. An order prohibiting victim contact for up to 10 years is rationally related to the nonpunitive purpose of victim protection and cannot be deemed excessive with respect to that purpose. (See *Alford, supra,* 42 Cal.4th at p. 757 [relevant factors in determining whether a statute is punitive include whether the statute has a rational connection to a nonpunitive purpose and whether the statute is excessive with respect to this purpose].) Moreover, a law that prohibits firearm possession for persons convicted of an offense before the law was enacted does not violate ex post facto principles. (See *People v. Mesce* (1997) 52 Cal.App.4th 618, 621, 623; *John L. v. Superior Court* (2004) 33 Cal.4th 158, 174, fn. 5 [citing *Mesce* with approval].)

In light of the foregoing, we conclude that section 136.2(i)(1) does not constitute punishment, and application of the then-current version of that statute at Ward's sentencing did not violate ex post facto principles. As noted *ante*, the court's order was clearly authorized by the version of section 136.2(i)(1) in effect at the time of Ward's sentencing. Therefore, we affirm the trial court's order.

### III.    DISPOSITION

The judgment is affirmed.


_____
BRUINIERS, J.


WE CONCUR:


_____
JONES, P. J.


_____
NEEDHAM, J.