Filed 7/7/15  P. v. Pavon CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B253706 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA381363) |
| v. | |
| ARTURO PAVON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, C.H. Rehm, Jr., Judge.  Affirmed with modifications.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant Arturo Pavon.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Arturo Pavon was convicted, following a jury trial, of two counts of continuous sexual abuse of a child in violation of Penal Code[1] section 288.5, subdivision (a), and eleven counts of committing a lewd act on a child in violation of 288, subdivision (a). The victims of these offenses were appellant's daughters G.V. and B.F., and B.F.'s half-sisters A.V. and K V. The jury found true the allegations that appellant committed the lewd acts on more than one victim within the meaning of section 667.61, subdivisions (b) and (e). The jury also found true the allegation that the statute of limitations was extended for the crimes against G.V. and A.V. pursuant to section 803, subdivision (f).

The trial court sentenced appellant to consecutive upper terms of 16 years for the two section 288.5 convictions plus four consecutive terms of 15 years to life for the counts 7, 11, 16 and 18 section 288 convictions, pursuant to section 667.61.

Appellant appeals from the judgment of conviction, contending that the prosecutor committed prejudicial misconduct during the examination of five prosecution witnesses and the cross-examination of two defense witnesses. Appellant also contends the abstract of judgment must be corrected with respect to the fines and fees, and the matter remanded for a determination of his ability to pay. We make a number of corrections to the fines and fees, as reflected below in the disposition. The judgment of conviction is affirmed in all other respects.

Facts

Appellant's daughter G.V. was born on June 20, 1985. She lived with him from birth until she was 17 years old. Appellant also had a daughter in Mexico with Victoria R. This daughter, B.F., was born on June 16, 1982. Later, Victoria had two daughters with another man. A.V. was born on December 23, 1984, and K.V. was born on November 7, 1985. Victoria and the three girls lived in Mexico until 1993.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

2

In 1993, appellant brought B.F. to Los Angeles. Later in 1993, Victoria moved to Los Angeles, bringing A.V. with her. Victoria wanted to be with appellant. In 1995, K.V. came to Los Angeles to live with her mother, sisters, and appellant.

Appellant was convicted of sexually abusing all four girls. The abuse began with G.V. Appellant was convicted of continuous sexual abuse of G.V. between June 20, 1990, when she turned five, and June 19, 1995. Appellant was also convicted of four counts of lewd acts on G.V. for the abuse which occurred between June 20, 1996 and June 19, 1999, the day before her fourteenth birthday.

Appellant next began sexually abusing A.V., beginning in 1993 when she was nine years old. Appellant was convicted of continuous sexual abuse of A.V. between April 1, 1993, and December 31, 1994. He was also convicted of one count of lewd acts on A.V., occurring between January 1, 1995, and December 22, 1998, the day before her fourteenth birthday.

The abuse continued with B.F., beginning in 1995 when she was 12 years old. Appellant was convicted of four counts of lewd acts on B.F., all occurring between January 1, 1995, when B.F. was 12 years old, and June 15, 1996, the day before her fourteenth birthday. Appellant also began sexually abusing K.V. in 1995, when she was nine years old. Appellant was convicted of two counts of lewd acts on K.V., both occurring between January 1, 1995, and November 6, 1999, the day before her fourteenth birthday.

Appellant had at least two other children who lived with him during the period the sexual abuse occurred. Appellant's son Luis was G.V.'s full brother. Luis did not testify at trial. Appellant's daughter Leticia F. was B.F.'s half-sister. Leticia testified at trial and provided partial corroboration for B.F.'s sexual abuse claims.

Appellant called two witnesses to testify in his defense. The first was Luis's wife Lizbeth Anzures. G.V. had testified that she tried to warn Lizbeth about appellant because she was worried that if Lizbeth and Luis had children, appellant would molest them. Lizbeth gave a different account of events. According to Lizbeth, she met and lived with G.V. for about a month when Lizbeth was 11 years old and G.V. was 16. G.V.

3

told Lizbeth that appellant touched her "pamper" and leg when she was three years old, but she never described any other incidents with appellant. Lizbeth recalled that G.V. and appellant seemed to have a good relationship.

Appellant's second witness was his sister, Maria Flores. She testified that G.V. lived with her for a few months in 2003, when G.V. was pregnant. One night, G.V. told Maria that she had been molested when she was three years old at a place she lived with her mother. Her parents sometimes left her alone with a man who wore glasses, and he molested her. She was angry that her parents has not protected her. G.V. never told Maria that appellant had abused her.

## Discussion

### 1. Prosecutorial Misconduct

Appellant contends the prosecutor committed misconduct by asking leading questions of prosecution witnesses G.V., B.F., A.V., K.V., and Leticia and also by asking defense witnesses Lizbeth and Maria questions which were intended to elicit inadmissible evidence or to encourage the jury to speculate. Appellant further contends the prosecutor "berated" Maria. Appellant contends this misconduct violated his right to due process and a fair trial.

Respondent contends appellant has forfeited this claim by failing to object on the ground of prosecutorial misconduct and failing to request an admonition. Appellant contends that if his claim is forfeited, he received ineffective assistance of counsel.

### a. General law

"""The applicable federal and state standards regarding prosecutorial misconduct are well established. '"A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.'"" (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214; *People v. Espinoza* (1992) 3 Cal.4th 806, 820.) Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is

prosecutorial misconduct under state law only if it involves "'"the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"'" (*Hill, supra,* 17 Cal.4th at 819.)" (*People v. Gray* (2005) 37 Cal.4th 168, 215-216.) Showing misconduct is not sufficient; an appellant must also demonstrate that his right to a fair trial was prejudiced by the misconduct. (*People v. Bolton* (1979) 23 Cal.3d 208, 214.) A defendant may not complain of prosecutorial misconduct on appeal if he failed to object to the conduct at trial or to request a curative admonition. (*People v. Pearson* (2013) 56 Cal.4th 393, 426.)

b.  Leading questions to prosecution witnesses

Appellant contends that the prosecutor's "excessive" use of leading questions to prosecution witnesses constituted misconduct.

"A 'leading question' is a question which suggests to the witness the answer that the examining party desires." (Evid. Code § 764.) Leading questions may be asked of witnesses on cross-examination without restriction. (Evid. Code § 767.) Leading questions may be asked on direct examination only under special circumstances where the interests of justice require it. (*Ibid.*) They may, for example, be used on direct examination to revive a witness's recollection. (*People v. Williams* (1997) 16 Cal.4th 635, 672.)

The use of leading questions constitutes misconduct only if there is a "showing that such examination had the effect of deliberately producing inadmissible evidence or called for inadmissible and prejudicial answers." (*People v. Hayes* (1971) 19 Cal.App.3d 459, 470.) There is no misconduct if the leading questions produced only evidence that could properly have been elicited by questions not objectionable in form. (*Ibid.*) Thus, simply objecting that a question is leading is not sufficient to alert the trial court that misconduct is being claimed. Accordingly, a claim of prosecutorial misconduct based on the prosecutor's use of leading questions is forfeited if the defendant "fail[s] to object to the prosecutor's question as misconduct." (*People v. Williams, supra*, 16 Cal.4th at 673

5

[claim of misconduct not preserved when defense counsel objected to questions as leading, but did not object to questions as constituting misconduct].)

Here, although appellant objected to approximately 50 questions as leading, he did not object that the questions constituted misconduct. Accordingly, he has forfeited his claim of prosecutorial misconduct. (*People v. Williams, supra*, 16 Cal.4th at 673.)

Appellant contends that his counsel was ineffective in failing to object properly and preserve the claim. Appellant has the burden of proving ineffective assistance of counsel. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) In order to establish such a claim, appellant must show that his counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's error, a different result would have been reasonably probable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington*, *supra*, 466 U.S. at 694.)

Appellant contends the prosecutor's use of leading questions was misconduct because the questions were "excessive." Appellant has not shown an excessive use of leading questions.[2] More importantly, appellant has not shown that those questions "had the effect of deliberately producing inadmissible evidence or called for inadmissible and prejudicial answers." (*People v. Hayes, supra,*19 Cal.App.3d at 470.)

---

[2]     Appellant identifies five prosecution witnesses of whom the prosecutor asked leading questions. In total, the prosecutor asked these five witnesses about 2000 questions. Appellant's trial counsel objected to about 50 of the prosecutor's 2000 questions as leading. Sixteen of those objections were sustained. Specifically, the prosecutor asked G.V. about 800 questions. Appellant objected to four questions as leading, and one series of three to five questions as "all" being leading. The court sustained three of the individual objections. Appellant objected to nine of the 600 questions the prosecutor asked A.V. Five objections were sustained. Appellant objected to 11 of the 700 questions the prosecutor asked B.F. The court sustained four of the objections. Appellant objected to two of the 140 questions the prosecutor asked Leticia. The court sustained one objection. Appellant objected to six of the 240 questions the prosecutor asked K.V. The court sustained three of the objections.

Since appellant has not shown that prosecutorial misconduct occurred, his counsel acted reasonably in not objecting that the leading questions constituted misconduct. Counsel is not required to make futile objections. (*People v. Ochoa* (1998) 19 Cal.4th 353, 427-428, 432 [meritless motion to exclude]; *People v. Price* (1991) 1 Cal.4th 324, 386-387.) Appellant's claim of ineffective assistance fails.

### c. Questions to defense witnesses

Appellant contends the prosecutor asked defense witnesses Lizbeth and Maria questions which were intended to elicit inadmissible evidence or to encourage the jury to speculate.

""""It is, of course, misconduct for a prosecutor to 'intentionally elicit inadmissible testimony.' [Citations.]" [Citation.] Such misconduct is exacerbated if the prosecutor continues to attempt to elicit such evidence after defense counsel has objected.' (*People v. Smithey* (1999) 20 Cal.4th 936, 960.)" (*People v. Tully* (2012) 54 Cal.4th 952, 1035.)

Appellant objected that the questions at issue called for speculative or irrelevant evidence and were argumentative. Assuming these objections were sufficient to alert the court to a claim of misconduct, appellant did not request any curative admonitions, and so has forfeited his claims. (See *People v. Pearson, supra,* 56 Cal.4th at 426.)

Appellant contends an admonition would have been ineffective, and so his claim has been preserved. (See *People* v. *Hill* (1998) 17 Cal.4th 800, 820.) As we discuss below, there was little to no prejudicial potential from the prosecutor's questions, and so there is no reason to believe an admonition would have been ineffective. This minimal prejudicial potential also means that appellant's claim of ineffective assistance of counsel fails.

### i. Questions about absent witness

Appellant contends that the prosecutor committed misconduct by asking Lizbeth a series of questions involving the absence of Lizbeth's husband, Luis from court. Appellant's trial counsel objected to most of these questions as calling for speculation

7

and to a few as calling for irrelevant evidence. All of the objections were sustained before the witness answered.

The prosecutor's questions had little to no prejudicial potential. The jury was aware through other properly introduced evidence that appellant had a son, Luis, who was a few years older than G.V. and who lived with appellant during some of the time that the sexual abuse occurred. By the end of trial they were no doubt aware that Luis had not appeared as a witness. The prosecutor's questions at most suggested that Luis did not want to come to court. There could be a variety of reasons for this reluctance. The prosecutor's questions did not suggest any improper motive. Thus, any slight prejudicial potential from the prosecutor's questions, could have easily been dispelled with an admonition to the jury that the reasons for Luis's absence were not relevant and the jury should not speculate about those reasons.

Since an admonition would have dispelled any prejudicial potential, appellant has forfeited his claim by failing to seek such an admonition. (*People v. Pearson, supra,* 56 Cal.4th at 426.)

Appellant contends that since his claim has been forfeited by his counsel's failure to seek an admonition, he received ineffective assistance of counsel. In order to establish such a claim, appellant must show that, but for counsel's error, a different result would have been reasonably probable. (*Strickland v. Washington, supra,* 466 U.S. at 687-688, 694; *People v. Ledesma, supra,* 43 Cal.3d at 216-218.)

Here, although counsel did not request a specific admonition concerning the questions about Luis, the jury was thoroughly instructed on how to view statements and questions by the attorneys. Before trial, the jury was instructed generally that "you must not consider as evidence any statement by an attorney during the trial. [¶] Similarly, a question by an attorney . . . is not evidence. A question is not evidence . . . Therefore you must not suspect that any insinuation or mere suggestion by a question is true." The jury was also told, "If a question is objected to and the objection is sustained . . . [y]ou must disregard the question and not speculate about what that answer might have been." Before deliberations began, the jury was again instructed that "Nothing that the attorneys

8

say is evidence . . . Their questions are not evidence. . . . Do not assume something is true because one of the attorneys asked a question that suggested that it was true." In addition, the court told the jury, "If I sustained an objection, you must ignore the question. If the witness was not permitted to answer, do not guess what the answer might have been or why I ruled as I did."

Thus, the jury was aware when they heard the prosecutor's questions about Luis that the questions were not evidence, that they should not suspect that any insinuation in a question was true and they should not speculate about the answer to a question when an objection was sustained. They were reminded of these rules before deliberation. These instructions were more than sufficient to prevent any prejudice from the prosecutor's questions. Jurors are presumed to follow the court's instructions. There is no reasonable probability that appellant would have received a more favorable outcome if his counsel had requested a specific admonition.

### ii. Delay in reporting molestation

Appellant contends the prosecutor also committed misconduct by asking Lizbeth two questions about her failure to tell anyone, including Luis, about a 12 year old conversation with G.V. in which G.V. stated that appellant had molested her. The first question the prosecutor asked was, "Isn't it kind of weird 12 years you don't tell anybody?" The court sustained defense counsel's objection that the question was argumentative. The prosecutor then asked, "And you never told [Luis] about this conversation that happened to [G.V.]; right?" Defense counsel did not object, and Lizbeth answered, "I don't think so, no."

Although the prosecutor's use of "weird" in the first question was argumentative, it did not result in an answer from the witness. The second question was proper. "There is nothing inherently improper about cross-examining a defense witness as to his failure to come forward at an earlier date. In fact, the information discovered during this type of questioning may well aid the trier of fact in its effort to determine whether the testimony is an accurate reflection of the truth or a recent fabrication." (*People v. Ratliff* (1987) 189

9

Cal.App.3d 696, 701.) This is so because in some situations, "a witness's silence may be akin to a 'prior inconsistent statement,' and therefore, has probative value." (*Ibid*.)

Since a prosecutor is free to comment on the evidence in opening and closing arguments, any possible prejudicial potential in the prosecutor's use of the word "weird" comes from its use in a question, which could suggest that it was an evidentiary fact that Lizbeth's silence was weird. Any such prejudicial potential could easily have been dispelled with a curative admonition telling the jury to disregard the prosecutor's "weird" comment and reminding the jury of the pre-trial instruction that "[a] question is not evidence . . . Therefore you must not suspect that any insinuation or mere suggestion by a question is true."

Since an admonition could have dispelled any potential prejudice from the prosecutor's use of the word "weird," appellant has forfeited his claim by failing to seek such an admonition. (*People v. Pearson, supra,* 56 Cal.4th at 426.)

Appellant contends that since his claim has been forfeited by his counsel's failure to seek an admonition, he received ineffective assistance of counsel. In order to establish such a claim, appellant must show that, but for counsel's error, a different result would have been reasonably probable. (*Strickland v. Washington, supra,* 466 U.S. at 687-688, 694; *People v. Ledesma, supra,* 43 Cal.3d at 216-218.)

Here, although counsel did not request a specific admonition concerning the "weird" question, the jury was thoroughly instructed on how to view statements and questions by the attorneys, as is detailed above. Thus, the jury was aware when they heard the prosecutor's "weird" question that the question was not evidence and that they should not suspect that any insinuation in the question was true. They were reminded of these rules before deliberation. These instructions were more than sufficient to prevent any prejudice from the prosecutor's use of the word "weird" in a question. Jurors are presumed to follow the court's instructions. There is no reasonable probability that appellant would have received a more favorable outcome if his counsel had requested a specific admonition.

10

iii.  Berating a witness

Appellant contends the prosecutor also committed misconduct by "berating" appellant's sister Maria and asking questions that invited the jury to speculate.  The prosecutor asked her if she could remember anything else "other than what you told Mr. Fisher about these statements that [G.V.] told you?"  Defense counsel objected that the question was vague and ambiguous, and the objection was sustained.  The witness nonetheless then said, "Like what?"  The prosecutor replied, "That's what we are trying to figure out."  Defense counsel objected that the statement was argumentative, and the objection was sustained.  This exchange is awkward but in no way improper.

The prosecutor next said, "Let me ask this first:  if you want us to know the truth, how come you are not answering any of these questions?"  Defense counsel objected that the question was argumentative, and the objection was sustained.  Even assuming that the question suggested that Maria was deliberately not answering questions for an improper purpose, the record shows that Maria had in fact been attempting to answer the prosecutor's questions, although she appeared to misunderstand some questions.  When asked clear and specific questions, Maria provided appropriate answers.  The jury was no doubt aware of this fact.  An admonition from the court reminding the jury that nothing an attorney says is evidence, and that it was the jury's job to decide the fact of the case would have been sufficient to dispel any potential prejudice from the question.

Since an admonition could have dispelled any potential prejudice from the prosecutor's question, appellant has forfeited his claim by failing to seek such an admonition.  (*People v. Pearson, supra,* 56 Cal.4th at 426.)

Appellant contends that since his claim has been forfeited by his counsel's failure to seek an admonition, he received ineffective assistance of counsel.  In order to establish such a claim, appellant must show that, but for counsel's error, a different result would have been reasonably probable.  (*Strickland v. Washington, supra,* 466 U.S. at 687-688, 694; *People v. Ledesma, supra,* 43 Cal.3d at 216-218.)

Here, although appellant's trial counsel did not request a specific admonition about the argumentative question to Maria, the jury was thoroughly instructed on how to

11

view statements and questions by attorneys, as is detailed above. Thus, they were aware when they heard the question that it was not evidence and that they should not suspect that any insinuation in the question was true. They were reminded of these rules before deliberation. These instructions were more than sufficient to prevent any prejudice from the prosecutor's argumentative question. Jurors are presumed to follow the court's instructions. There is no reasonable probability that appellant would have received a more favorable outcome if his counsel had requested a specific admonition.

2. Fines and Fees

Appellant contends (1) the abstract of judgment should be corrected to reflect the trial court's imposition of a $200 restitution fine and a $200 parole revocation fine; (2) the section 290.3 fine must be reduced to the amount in effect when he committed his offenses; (3) the section 294 child abuse fine must be stricken; (4) the Government Code section 76104.7 DNA assessment must be stricken; and (5) the Government Code section 70373 assessment must be stricken. Respondent agrees with the first four contentions, but does not agree the Government Code section 70373 must be stricken. Respondent is correct.

a. Restitution and parole revocation fines

At the sentencing hearing, the trial court properly imposed a section 1202.4 restitution fine of $200 and a section 1202.45 parole revocation fine of $200. The minute order for the sentencing hearing and the abstract of judgment show $280 fines. The oral pronouncement of sentence controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 184-186.) The minute order and abstract of judgment are ordered corrected. (*Ibid.*)

b. Section 290.3 sex offender fine

When appellant was sentenced, section 290.3, subdivision (a) provided for a fine of $300 for a defendant's first qualifying sex offense. The trial court imposed a fine in that amount on appellant. However, appellant's sex offenses were alleged to have

12

occurred from 1990 through 1999.  At that time section 290.3, subdivision (a), provided for a $200 fine for a defendant's first qualifying conviction.  Appellant's fine must be reduced to the $200 amount in effect when he committed his offenses.  (*People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248.)

    c.  Section 294 child abuse fine

The trial court imposed a $500 fine pursuant to section 294, subdivision (b)(1).  That section became effective on January 1, 1994.  Most of appellant's sexual abuse was alleged to have occurred after that date.  However, appellant's sexual abuse of G.V. was alleged to have occurred between 1990 and 1996, while his sexual abuse of A.V. was alleged to have occurred between April 1, 1993 and December 31, 1994.  While it is quite possible the abuse occurred before 1994, the victims' testimony was not specific as to time, and the jury did not make any findings concerning the specific dates the abuse occurred.  Thus, it is not clear whether appellant was convicted for offenses which occurred after the enactment of section 294.  (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1372; *People v. Hiscox* (2006) 136 Cal.App.4th 253, 257-261 [where offenses were alleged to have occurred between 1992 and 1996, but testimony was not specific about dates of abuse and jury did not make findings about dates, defendant could not be sentenced under statute which became effective in 1994; such a sentence would violate ex post facto prohibitions]; see *People v. Saelee* (1995) 35 Cal.App.4th 27, 30 [under ex post facto principles, amount of fine is calculated as of the date of the offense].)  Accordingly, the fine must be stricken.

    d.  DNA assessment

The trial court imposed a $20 DNA assessment fee pursuant to Government Code section 76104.7.  That section became effective on July 12, 2006.  (Assem. Bill No. 1806 (2005-2006 Reg. Sess.) § 18.)  Ex post facto principles preclude the imposition of the assessment.  (See *People v. Voit, supra,* 200 Cal.App.4th at 1372.)  It must be stricken.

e. Government Code section 70373 assessment

The trial court imposed a $390 assessment pursuant to Government Code section 70373, which became effective on January 1, 2009. This section provides in part that "an assessment shall be imposed on every conviction for a criminal offense." Appellant was convicted in this matter on December 3, 2013.

Numerous courts have held that because the assessment is tied to a defendant's conviction, it is meant to apply to any conviction suffered after the January 2009 effective date of the statute, regardless of the date of the offense. (*People v. Castillo* (2010) 182 Cal.App.4th 1410; see *People v. Cortez* (2010) 189 Cal.App.4th 1436, 1443-1444; *People v. Lopez* (2010) 188 Cal.App.4th 474, 480-480; *People v. Mendez* (2010) 188 Cal.App.4th 47, 60-61; *People v. Phillips* (2010) 186 Cal.App.4th 475, 477-479; see also *People v. Davis* (2010) 185 Cal.App.4th 998, 1000.) Appellant contends those cases are wrongly decided.

Appellant urges that we follow the reasoning of *People v. High* (2004) 119 Cal.App.4th 1192, which found that the state court construction penalty imposed under Government Code section 70372 was punitive and subject to ex post facto restrictions. There are numerous differences between Government Code sections 70372 and 70373. Significantly, section 70372 uses the term "penalty" to describe the money a defendant is required to pay, thus showing a penal purpose by the legislature. Section 70373 uses the term "assessment" for the money a defendant is required to pay and so does not indicate a penal purpose. We find the reasoning of *Castillo*, which concerns section 70372, to be persuasive.[3]

---

[3]     We note that *Castillo* and *High* are both decisions of the Third District Court of Appeal. The author of *Castillo*, Justice Butz, is one of the justices who had earlier decided *High*. Justice Robie, another of the justices who decided *High*, also participated in *Castillo*. Presumably, they did not believe that the reasoning in *Castillo* was inconsistent with their earlier decision in *High*.

14

Disposition

The fine imposed pursuant to section 290.3 is reduced to $30. The section 294 child abuse fine and the Government Code section 76104.7 DNA assessment are both stricken. The clerk of the superior court is directed to prepare an amended abstract of judgment reflecting these changes and also showing that the correct amount of the section 1202.4 restitution fine is $200 and the correct amount of the section 1202.45 parole revocation fine is also $200. The judgment is affirmed in all other respects.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIRSCHNER, J.[*]


We concur:


MOSK, Acting P.J.


KRIEGLER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.