Filed 4/26/22  P. v. Binns CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B312611 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BA403335 |
| MARQUES SAYYED BINNS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, George G. Lomeli, Judge. Affirmed as modified and remanded with directions.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

In 2013, defendant Marques Sayyed Binns and a codefendant were convicted of murder; Binns, who was the getaway driver, was prosecuted as an aider and abettor under the natural and probable consequences doctrine. In 2019, after the Legislature abolished that theory of liability, Binns petitioned for recall and resentencing under Penal Code section 1170.95. In 2021, on remand from this court, the trial court granted the petition and resentenced Binns to the target offense of assault with a firearm.

On appeal, Binns argues that, based on his excess custody credits, his restitution fine should be deemed satisfied. The People concede the point, and we modify the judgment accordingly. Binns also argues that he should not be required to pay the victim restitution award because it was based on his murder conviction, which no longer stands, and his conduct underlying the assault conviction was not a substantial and proximate cause of the claimed financial losses. We reject Binns's challenges to the victim restitution award. Because the resentencing minute order and amended abstract of judgment do not, however, reflect the sentencing proceedings, we remand for correction of the order and amended abstract of judgment.

# BACKGROUND[1]

## 1.    2013 Murder Conviction

By information filed October 24, 2012, Binns and codefendant Theron Hiraań Shakir were charged with one count of murder (Pen. Code,[2] § 187, subd. (a); count 1) committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(4)). The information also alleged that Shakir personally and intentionally discharged a firearm, which proximately caused death (§ 12022.53, subds. (d) & (e)(1)) and that a principal personally and intentionally discharged a firearm, which proximately caused death (*ibid.*).

The trial evidence established that on December 29, 2010, Taburi Watson was shot multiple times and killed near St. Andrews Park at 87th and St. Andrews. A bicycle was nearby in the street. A park employee heard the shots and later saw Watson lying on the ground and two people walking southbound on St. Andrews.

Creonia Ward—Shakir's former girlfriend—implicated Shakir, Timothy Allen, and Binns in the killing. Ward told detectives that Shakir, Allen, and Binns left her house. She also told detectives that on the night of the shooting, Shakir told her that Binns, Shakir, and Allen drove to the park. Binns remained

---

[1] In his 2021 petition, Binns notes that his statement of facts was taken from this court's 2015 opinion, *People v. Binns* (June 30, 2015, B250120) [nonpub. opn.] (*Binns I*).) Our factual and procedural summary is taken from *Binns I* and our 2020 opinion, *People v. Binns* (Sept. 22, 2020, B297560) [nonpub. opn.] (*Binns II*).

[2] All undesignated statutory references are to the Penal Code.

in the car while Shakir and Allen exited and later shot Watson, who had been on a bicycle. After the shooting, the three went to Binns's mother's house and hid the gun next door. The three later went to Ward's house, where Binns said, "I can't wait to tell Brandon, he's going to be so happy." Ward testified Binns's cousin, Brandon, previously had been shot, and Binns, Shakir, and Allen felt they needed to retaliate.

According to Detectives Myra Kellum and John Ferreria, Binns told them that he drove to St. Andrews Park, and Shakir and Allen exited the car. Shakir and Allen went through the park, saw someone, and started shooting. Binns said, "it would be a lie to say I didn't know what they was fixing to start doing, but not till it was too late; that's when we was already there." (*Sic.*) After the shooting, Binns drove Shakir and Allen to Binns's house and "[t]hen they told him that I hid some guns for them." Binns also told detectives that Shakir was saying "it was like a favor to [Binns] to go and shoot."

At trial, the jury was instructed that it could convict Binns as an aider and abettor of murder if he either: (1) directly aided and abetted first or second degree murder; or (2) aided and abetted assault with a deadly weapon, and murder was a natural and probable consequence of that crime.[3]

In his closing argument, the prosecutor argued that Binns, by acting as the getaway driver, aided and abetted premeditated murder. He also argued, in the alternative, that even if Binns did not want to kill or help kill anyone, he could be guilty of second

---

[3] The jury was instructed with CALJIC Nos. 3.00, 3.01, 3.02, 9.00, 8.00, 8.10, 8.11, 8.20, 8.30, 8.70, 8.71, and 8.74.

degree murder by aiding and abetting assault with a firearm. The prosecutor explained:

> I know they're looking for rivals. This is a logical place. Maybe they're going to assault somebody with the firearms. Maybe they'll shoot at them. Maybe they'll hit them. Maybe they'll miss. Maybe they'll just try to scare them. Who knows?
>
> Under the law, you can still be guilty of murder. Because when you go around looking for rivals to shoot—whether you intend to kill or not—if you shoot them, and you are just thinking, "I'm going to assault them with a firearm," and they end up dying, then that murder is what we call, in the law, a natural and probable consequence of the assault. Then everybody involved is guilty of the murder.

The prosecutor emphasized that even if Binns was just "sitting in the car" and "didn't share the same evil intent" as the shooters—"even if he's just thinking, 'they're going out there; I'm here ready to help them; they're just going to assault' "—he was still guilty of murder because he aided and abetted the assault.

In January 2013, the jury convicted Binns of second degree murder. It found true the allegation that a principal personally and intentionally discharged a firearm, causing death, but found the gang allegation not true.

Binns was sentenced to 15 years to life for count 1. Because the jury found the gang allegation not true, no sentence was imposed for the firearm enhancement. (§ 186.22, subd. (e)(1)(A).) The court imposed a $280 restitution fine under section 1202.4,

subdivision (b), and imposed and stayed an equal parole-revocation restitution fine under section 1202.45. The court also imposed a $40 court security assessment under section 1465.8, subdivision (a)(1), and a $30 criminal conviction assessment under Government Code section 70373. Finally, the court ordered Binns to pay victim restitution of $1,353 to the victim's mother and $7,500 to the State Victim Compensation Board, for a total restitution award of $8,853, under section 1202.4, subdivision (f).

Binns appealed, and the judgment was affirmed in *Binns I*.

### 2.    Section 1170.95 Petition and Appeal

On January 7, 2019, Binns filed a petition for resentencing under section 1170.95. The petition alleged that a "complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; at trial, he "was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine"; he could not be convicted of murder under sections 188 and 189 as amended; and he "was convicted of 2nd degree murder under the natural and probable consequences doctrine … and [he] could not now be convicted of murder" under section 188 as amended. Binns did not check the box on the petition requesting appointment of counsel.

The case was called on March 14, 2019. The minute order for that date states: "Defendant is not present in court, and not represented by counsel. No appearance nor any contact with a representative of the Los Angeles County District Attorney's Office this date. This matter is ordered continued to May 9, 2019, in this court." A copy of the minute order was forwarded to the District Attorney, but not to Binns.

6

On April 19, 2019, the court issued an order denying the petition. No attorneys were present. After summarizing the factual background, the court wrote:

> In his petition filed pursuant to P.C. 1170.95, the petitioner, Mr. Binns claims that he is entitled to relief for resentencing as he was neither the actual killer, nor one who aided and abetted the commission of the murder with the intent to kill, nor a major participant who acted with reckless indifference to human life. This Court however, disagrees. Specifically, based upon the totality of the evidence it is clear that the petitioner aided and abetted the two individuals who committed the murder when he drove with them to the location of the incident not only realizing at some point that the two individuals were armed, but also realizing what they were preparing to do or in his words, " … fixing to start doing …[ ]" albeit according to the petitioner not until it was too late. Accordingly, it can be argued that the defendant in his actions was a major participant who acted with reckless indifference.

> Accordingly, as a major participant who acted with reckless indifference to human life at the time that he aided and abetted the shooters in this case the petitioner is arguably not eligible for resentencing relief pursuant to P.C. 1170.95. See P.C. [s]ections 189(a)(1) and 1170.95(a)(3).

The order didn't specify whether the court believed Binns aided and abetted the murder or aided and abetted the assault with a firearm.

"As a second and independent ground for denying [the] petition for resentencing," the court also found S.B. 1437 and section 1170.95 unconstitutional.

Binns filed an "Opposition to Denial of Petition for Resentencing Pursuant to PC 1170.95(a)" in this court as a petition for writ of habeas corpus. Because the petition was filed within the time to appeal from the order denying the petition for recall and resentencing, we deemed the habeas petition to be a notice of appeal.

On appeal, Binns argued that the trial court erred by: summarily denying the petition without following the statutory procedure set forth in section 1170.95; denying the petition on the basis that Binns was "arguably not eligible for resentencing relief"; denying the petition based on its conclusion that Binns was a "major participant who acted with reckless indifference" to human life, a felony-murder theory that does not apply here because Binns was prosecuted under the natural and probable consequences doctrine; and denying the petition on the ground that S.B. 1437 is unconstitutional. The People properly conceded the errors, and we agreed with the parties.

We therefore reversed and remanded for further proceedings as follows: "The order denying Binns's petition under section 1170.95 is reversed and the matter is remanded with directions to appoint counsel to represent Binns, if requested, obtain a response from the prosecution, and allow Binns to file a reply. (§ 1170.95, subd. (c).) The court shall then determine, in accordance with the views expressed in this opinion, whether

Binns has made a prima facie showing that he is entitled to relief. If it determines Binns has made the required showing, the court shall issue an order to show cause and proceed as directed under section 1170.95." (*Binns II*, at p. 14.)

**3.    Remand, OSC, and Subsequent Proceedings**

On remand, the court appointed a bar panel attorney, Joseph A. Markus from the Law Office of Stein and Markus, to represent Binns.[4]

On February 11, 2021, defense counsel filed a "Request for Relief," which stated that Binns had made a prima facie showing of entitlement to relief and asked the court to hold that the prosecution could not "prove beyond a reasonable doubt a valid legal theory to sustain conviction. Petitioner neither acted with express nor implied malice and the only legal conclusion that can be made is that his conviction is based solely on the natural and probable consequences theory." As for the remedy, defense counsel asked the court "to find that [Binns] was not the actual killer, there was no intent to kill in this matter by [Binns] either as an aider and abettor or an actual participant." Counsel did not mention victim restitution in the petition for relief.

On March 16, 2021, the court found Binns had made a prima facie case for relief, issued an order to show cause, and set the matter for an evidentiary hearing. The prosecution filed an opposition, and defense counsel filed a reply. In his reply, defense counsel did not mention victim restitution; instead, counsel reiterated that the court should "find that [Binns] was not the

_____

[4] It appears that the court appointed Markus as Binns's attorney in early December 2020. On March 16, 2021, the court denied as untimely Mohammad Aly's substitution request.

9

actual killer, there was no intent to kill in this matter by [Binns] either as an aider and abettor or an actual participant."

On April 21, 2021, the court held an evidentiary hearing at which Binns was not present but was represented by counsel, Joseph Markus and Andrew Stein. The court heard arguments and ruled that there was insufficient evidence to "support a theory of liability of murder under an implied malice theory beyond a reasonable doubt," and, therefore, Binns was entitled to relief under section 1170.95.

The court then redesignated Binns's conviction as the target offense of assault with a firearm (§ 245, subd. (a)(2)) and resentenced him to the upper term of four years:

> Having made such a finding that the petitioner is therefore entitled to relief … to a charge of murder and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes.
>
> For purposes of the natural and probable consequences theory, the target offense—or the target crime—that was not charged was a violation of Penal Code section 245(a)(2), or assault with a deadly weapon, which carries a sentencing term of two, three, and four years.
>
> [¶] … [¶]
>
> Accordingly, the defendant's murder conviction shall be redesignated as the target offense of 245(a)(2), and he shall receive a sentence in the high term of four years, which shall amount to

10

> credit time served. *All other sentencing terms
> shall remain.*

(Italics added.) The court also imposed a three-year parole term. On April 29, 2021, the sentencing minute order was amended nunc pro tunc by deleting the reference to assault with a deadly weapon and replacing it with assault with a firearm.

Defense counsel did not mention victim restitution during the April 21, 2021 hearing. Counsel also did not ask for a continuance of the proceedings, or for clarification of the court's order or the sentencing terms. Instead, defense counsel asked whether they "need to give the clerk the inmate's CDC number and the location of the prison so he can send the paperwork?" In response to that question the clerk and the court stated they had Binns's CDC number. The prosecutor then interjected: "Excuse me, Your Honor. One moment. The victim's mother is present. I didn't realize we were going directly into a sentencing hearing. May I check to see—." An off-the-record discussion was held, after which the proceedings concluded.

In response to letters sent by appellate counsel, in September 2021 the court amended the April 21, 2021 sentencing minute order nunc pro tunc by, among other things, reducing the parole term to two years. The amended abstract of judgment, filed on September 9, 2021, indicates that Binns was convicted on April 21, 2021 of assault with a firearm and was ordered to pay the previously ordered restitution fine in the amount of $100 "if not yet satisfied." The April 21, 2021 sentencing minute order and abstract of judgment, as well as the subsequent minute

11

orders and the September 9, 2021 amended abstract of judgment, do not mention victim restitution.[5]

Binns filed a timely notice of appeal from the April 21, 2021 judgment, and we appointed counsel to represent him.

On October 25, 2021, appointed counsel filed a brief in which she raised no issues and asked us to review the record independently under *People v. Wende* (1979) 25 Cal.3d 436. Binns filed a supplemental brief raising several claims, including a challenge to the victim restitution award. After reviewing the record, we requested supplemental briefing from the parties concerning whether we should modify the sentence to deem Binns's restitution fine satisfied and whether we should strike the victim restitution award.

## DISCUSSION

### 1.    The Law of Murder and Senate Bill No. 1437

Murder is "the unlawful killing of a human being … with malice aforethought." (§ 187, subd. (a).) Malice may be express or implied. (§ 188.) Express malice is the intent to kill, whereas implied malice exists "where the defendant … acted with conscious disregard that the natural and probable consequences of [his or her] act or actions were dangerous to human life. [Citation.]" (*People v. Gonzalez* (2018) 5 Cal.5th 186, 197.) Although malice is an element of murder, when Binns was convicted, the law allowed defendants who did not act with malice to be liable for murder under certain circumstances.

---

[5] They also do not mention the $70 assessments that were imposed on July 19, 2013.

12

"First, under the natural and probable consequence[s] doctrine, a defendant who aids and abets a confederate in committing a crime (the target offense) is liable for other crimes committed by the confederate if those further crimes were natural and probable consequences of the target offense. [Citation.] Thus, under prior law, if the direct perpetrator of the target offense committed murder, and the murder was a natural and probable consequence of the target offense, then an aider and abettor of the target offense would be liable for the murder even if the aider and abettor did not act with malice. (*People v. Gentile* (2020) 10 Cal.5th 830, 845 ['until recently, when a person aided and abetted a nonhomicide crime that then resulted in a murder, the natural and probable consequences doctrine allowed him or her to be convicted of murder without personally possessing malice aforethought'].)" (*People v. Eynon* (2021) 68 Cal.App.5th 967, 973 (*Eynon*).)

Second, under prior California law, every accomplice to an enumerated felony could be convicted of first degree murder if a death occurred during the commission of that felony—regardless of whether the accused killed or intended to kill. (See *People v. Dillon* (1983) 34 Cal.3d 441, 462–472.)

Senate Bill No. 1437 (S.B. 1437) was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) It accomplished this " 'by amending sections 188 and 189 to restrict the scope of first degree felony

13

murder and to eliminate murder liability based on the natural and probable consequences doctrine. (Stats. 2018, ch. 1015, §§ 2–3.)' [Citation.]

"Amended section 188 provides that, except for first degree felony murder, 'in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3).) The requirement that the principal act with malice eliminates all murder liability under the natural and probable consequences doctrine. [Citation.]

"Amended section 189 limits the first degree felony-murder rule by imposing new requirements for its application. The statute provides that, unless the victim is a peace officer killed in the line of duty, a defendant cannot be liable for first degree felony murder unless the defendant was the actual killer, acted with intent to kill, or was a major participant in the underlying felony and acted with reckless indifference to human life. [Citations.]" (*Eynon, supra,* 68 Cal.App.5th at pp. 973–974.)

**2.  Section 1170.95**

In addition to changing the law of murder prospectively, S.B. 1437 gave people who had been convicted under one of the now-invalid theories of murder the opportunity to petition for resentencing under newly-enacted section 1170.95. (Stats. 2018, ch. 1015, § 4.) As enacted, section 1170.95 applied only to people convicted of murder, but on October 5, 2021, the Governor signed S.B. 775, which expanded eligibility under the statute to people who had been charged with either murder or attempted murder but convicted of manslaughter. (Stats. 2021, ch. 551, § 2.)

Section 1170.95, subdivision (a)(3), describes who may petition for resentencing under the statute. Subdivision (b)

14

explains what information the petition must contain, where the petitioner must file it, who the petitioner must serve, and what the court should do if it's incomplete. Subdivision (c) describes the process the court uses to determine whether the petitioner is entitled to an evidentiary hearing: Appoint counsel, if requested; wait for the prosecutor's required response and the petitioner's optional reply; if the petitioner makes a prima facie showing that he or she is entitled to relief, issue an order to show cause. (*Lewis*, *supra*, 11 Cal.5th at p. 966.) If the petitioner establishes a prima facie entitlement to relief, the court must issue an order to show cause. Subdivisions (d)–(g) describe the procedures for holding an evidentiary hearing, the type of evidence that may be admitted, the burden of proof, and the requirements for resentencing an eligible petitioner.

### 3.     Binns's Challenges to the Victim Restitution Award

After Binns's release from prison, the Franchise Tax Board mailed him a debt-collection notice for $11,256.23. The notice lists the Department of Corrections and Rehabilitation as the referring office and provides the superior court case number in this matter. The referred debt appears to be based on the $280 restitution fine and $8,853 in victim restitution (plus accrued interest) imposed at Binns's 2013 sentencing hearing.[6]

Binns asks us to strike the victim restitution award because an order requiring him to reimburse the victim for losses stemming from his murder conviction, which no longer stands, is an unauthorized sentence. Binns also contends that his conduct

---

[6] As noted, Binns was ordered to pay $1,353 to the victim's mother and $7,500 to the State Victim Compensation Board.

underlying the redesignated assault conviction was not a substantial and proximate cause of the claimed financial losses. Alternatively, he argues that the case must be remanded for a restitution hearing at which the prosecution bears the burden to prove that his conduct was a substantial and proximate cause of the claimed financial damages. For their part, the People contend Binns forfeited any challenge to the victim restitution award and, in any event, the award is legally authorized because Binns's criminal conduct led to the foreseeable fatal shooting of the victim.

Factual issues may be subject to the waiver or forfeiture rule, but an objection may be raised for the first time on appeal where it concerns an unauthorized sentence—i.e., one that could not lawfully be imposed under any circumstance in the particular case. (See *People v. Percelle* (2005) 126 Cal.App.4th 164, 179.) That is, whether the court imposed an order in excess of its statutory authority is a purely legal issue that is not subject to the waiver or forfeiture rule. (*Ibid.*)

As a preliminary matter, we reject Binns's contention that the victim restitution award is unauthorized because it was based on his vacated murder conviction. Section 1170.95, subdivision (d)(1), requires the court, upon finding a defendant eligible for resentencing, "to vacate the murder … conviction and to recall the sentence and resentence the petitioner on any remaining counts *in the same manner as if the petitioner had not previously been sentenced*, provided the new sentence, if any, is not greater than the initial sentence." (Italics added.) This is consistent with the full resentencing rule, in which " ' "a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of changed

16

circumstances." ' [Citations.]" (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 999–1000.) Here, the court redesignated Binns's murder conviction to assault with a firearm, imposed sentence for that conviction, and then stated "all other sentencing terms shall remain." As a prior sentencing term imposed in 2013, the victim restitution award was, therefore, reimposed in connection with the assault with a firearm conviction.

Binns argues he is not responsible for the victim's losses because his criminal conduct, driving the shooters to the park, was "not a necessary antecedent to the shooting," "and waiting in the car was not sufficient by itself to bring about the shooting and the victim's death." Essentially, Binns suggests that the victim restitution award was not authorized by section 1202.4, subdivision (f) because Shakir and Allen were responsible for shooting Watson.

But the sentencing court's statutory authority was not so limited. Section 1202.4, subdivision (f) provides for a direct restitution order "in every case in which a victim has suffered economic loss as a result of the defendant's conduct." The order is to be for an amount "sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (*Id.*, subd. (f)(3).) "The statute does not distinguish between economic losses caused by physical injuries and those caused by psychological trauma." (*People v. Brasure* (2008) 42 Cal.4th 1037, 1075.) And a defendant may be criminally liable for a result directly caused by his acts even if there is another contributing cause. (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1397.)

Binns also argues that the victim restitution award must be stricken because the facts show that his conduct was not a

17

substantial and proximate cause of the claimed financial losses. "But by his failure to object, [Binns] forfeited any claim that the order was merely unwarranted by the evidence, as distinct from being unauthorized by statute." (*People v. Brasure*, *supra*, 42 Cal.4th at p. 1075; see also *People v. Mays* (2017) 15 Cal.App.5th 1232, 1237 [defendant wishing to argue on appeal that there is no factual basis for a restitution order must object on that ground in the trial court to preserve the issue for appeal].)

In sum, the order for victim restitution for the assault with a firearm conviction was within the sentencing court's statutory authority, and Binns neither raised an objection to the amount of the award nor requested a hearing to determine if his conduct was a substantial and proximate cause of the claimed financial losses. Because the sentencing minute order and amended abstract of judgment do not, however, reflect the sentencing proceedings they purport to memorialize, we remand for correction of the order and amended abstract of judgment. (See *People v. Scott* (2012) 203 Cal.App.4th 1303, 1324.)

4. **Binns's excess custody credits satisfy the restitution fine, if any.**

According to the resentencing minute order, "[t]he restitution fine, as originally ordered pursuant to Government Code section 13967(a), in the amount of $100 remains as originally ordered; only due if not yet satisfied." But Government Code section 13967, subdivision (a), was repealed in 2003, a decade before Binns was originally sentenced. (Stats. 2003, ch. 230, § 2.) And according to the sentencing minute order and abstract of judgment from 2013, the court actually imposed $280 under section 1202.4, subdivision (b). In any event, the parties

18

agree, as do we, that the restitution fine—whether it was $280 or $100—has been satisfied by Binns's excess custody credits.

"The United States Constitution and the California Constitution proscribe ex post facto laws. [Citations.] Under both Constitutions, '[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts.' [Citations.]" (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1173.) Because fines are punishment, ex post facto principles apply to them. (*People v. Alford* (2007) 42 Cal.4th 749, 757–758.)

Therefore, this case is governed by the version of section 2900.5 in effect in 2010, when Binns committed the assault. (See *People v. Morris* (2015) 242 Cal.App.4th 94, 101–102 (*Morris*) [since restitution fine was punishment, ex post facto clause applied].) At the time, that statute stated, in pertinent part:

> In all felony … convictions, … when the defendant has been in custody, … all days of custody[,] … including days credited to the period of confinement pursuant to Section 4019, shall be credited upon his or her term of imprisonment, or credited to any fine on a proportional basis, *including*, but not limited to, base fines and *restitution fines*, which may be imposed, at the rate of not less than thirty dollars ($30) per day, or more … .

(§ 2900.5, subd. (a), as amended by Stats. 1996, ch. 1077, § 28, italics added.) Although the Legislature later amended the provision to exempt restitution fines from those to which excess

19

custody credits may be applied,[7] under the plain language of the statute in effect in 2010, the court was required to apply Binns's excess custody credits to reduce his restitution fine at a rate of at least $30 per day of excess custody credit. (*People v. Lamoureux* (2020) 57 Cal.App.5th 136, 152; see also *Morris*, at pp. 101–103 [deeming defendant's restitution fine satisfied under version of section 2900.5 in effect at the time of his offense].)

Binns was arrested on August 2, 2011, and resentenced on April 21, 2021.[8] Thus, Binns was incarcerated for 3,551 days. Subtracting four years (1,460 days) from that total leaves excess actual custody credit of 2,091 days. At a minimum rate of $30 per day, Binns was entitled to offset his fines by $62,730. Since his restitution fine was $280 or $100, Binns is entitled to a total offset of the fine. We therefore modify the judgment to deem the restitution fine satisfied. (See *People v. Lamoureux, supra*, 57 Cal.App.5th at p. 154.)

---

[7] (Stats. 2013, ch. 59, § 7; *Morris, supra*, 242 Cal.App.4th at p. 100.)

[8] Binns's unopposed request for judicial notice of the opinion and appellate record in case No. B250120 is granted. (Evid. Code, § 451, subd. (a).)

## DISPOSITION

The judgment is modified to deem the restitution fine satisfied. The matter is remanded to the trial court to allow it to correct the April 21, 2021 minute order and the September 9, 2021 amended abstract of judgment to reflect its oral pronouncement of sentence. The court shall prepare a new amended abstract of judgment reflecting the judgment as modified and corrected, and send a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.

21