Filed 6/9/22 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DERECK FLOURNOY OWENS, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B310427<br>(Super. Ct. No. SM105565)<br>(Santa Barbara County)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on May 18, 2022, and certified for publication, be modified as follows:

At the end of the first full paragraph on page 13, insert after "(See *Maryland v. Baltimore Radio Show* (1950) U.S. 912, 918.) footnote 4 as follows:

" [4]We do not discourage trial courts nor litigants on appeal from considering the retroactivity vel non of a newly enacted provision of the Penal Code. The phrase, "du jour" was applied by the late Justice William Masterson to describe a recurring issue in the decisional law. We encourage robust advocacy on this developing area of the law. We also point out that the

"procedural vs. substantive" analysis has been called into question by our Supreme Court. (*In re Friend* (2021) 11 Cal.5th 720, 742.) Retroactivity issues continue to be a source of conflicting views. (*People v. Padilla* (May 26, 2022, S263375) __ Cal.5th __ [2022 Cal. LEXIS 2916], four to three opinion (opn. by Lui, J.; dis. opn. of Corrigan, J.).)"

There is no change in judgment.

---

Yegan, Acting P.J.                                   Perren, J.

Filed 5/18/22 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DERECK FLOURNOY<br>OWENS, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B310427<br>(Super. Ct. No. SM105565)<br>(Santa Barbara County) |

This case is a perfect illustration of a person not entitled to Penal Code section 1170.95 relief.[1]  Dereck Flournoy Owens, Jr. appeals from the trial court's denial of his petition for resentencing following an evidentiary hearing.  He contends there was insufficient evidence he acted with reckless indifference to human life when he participated in a brutal "take-over" robbery/murder.  We affirm.

---

[1] All future statutory references are to the Penal Code.

FACTS AND PROCEDURAL HISTORY[2]

On August 8, 1997, appellant and three other men committed a robbery at the Vandenberg Federal Credit Union in Lompoc. All four men used firearms. One of appellant's accomplices, Bowen, took about $12,000 from the teller drawers of two tellers. Another accomplice, Adams, removed $200 from the hand of a third teller. Appellant, displaying a .38 caliber firearm, entered the office of a bank credit counselor and ordered her and a customer to get on the floor. When they failed to respond, appellant cocked his pistol and repeated his demand. The credit counselor and customer then complied with his demand.

Moments later, one of appellant's accomplices, Mitchell, shot a man in the leg as he entered the bank. Mitchell then fatally shot Christine O. in the back as she attempted to run from the bank towards her parked car where her 11-year-old son was waiting. After the shootings, appellant and his accomplices ran out of the credit union. As they ran past Christine O.'s body on the sidewalk, Bowen stooped down and took her handbag. The four men fled. A month later appellant turned himself in to the police and confessed.

---

[2] We granted appellant's request for judicial notice of the prior appellate record, *People v. Owens*, B130064. (Evid. Code, § 452, subd. (d).) We summarize these facts from our prior, unpublished opinion. (*People v. Owens* (Aug. 17, 2000, B130064) (*Owens*).)

*Verdict and Sentencing*

A jury found appellant guilty of first degree murder (§§ 187, subd. (a), 189), second degree commercial burglary (§ 459), assault with a firearm (§ 245, subd. (a)(2)), and three counts of robbery (§ 211). The jury also found true that appellant personally used a firearm as to each offense (§ 12022.5, subd. (a)). The jury was unable to reach a verdict on the robbery-murder special circumstance allegation. (§ 190.2, subd. (a)(17).) The trial court dismissed that allegation, and the People elected not to retry it. The trial court sentenced appellant to state prison for a total term of 48 years, 8 months to life.

We affirmed appellant's judgment in an unpublished opinion. (*Owens*, *supra*, B130064.)

*Section 1170.95 Proceedings*

In 2019, appellant filed a petition for resentencing. The trial court appointed counsel, issued an order to show cause, received briefing, and conducted an evidentiary hearing. (§ 1170.95, subds. (c), (d)(1).)

At the hearing, appellant conceded that he aided and abetted in the robbery, but argued that he was not a major participant who acted with reckless indifference citing *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), and *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*).[3] He also argued the relevance of his youth, age 19, at the time of the robbery.

---

[3] The *Banks*, *Clark*, *and Scoggins* factors are derived from the United States Supreme Court's death penalty opinions in *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*) and *Enmund v. Florida* (1982) 458 U.S. 782.

Neither party presented new evidence at the hearing. The prosecution and the defense relied exclusively on the record of conviction and the presentence probation report. Appellant did not object. The trial court also reviewed the surveillance video of the robbery, the transcript from the original trial, appellant's recorded statements made to the police, the sentencing memorandum, and the court file.

*Trial Court Order*

The trial court issued a comprehensive and well-written 20-page order denying relief. It could serve as a model of how a trial court should make a written ruling. It preliminarily addressed three procedural issues: (1) whether the prosecution's burden of proof at the hearing was "substantial evidence" or "beyond a reasonable doubt" pursuant to section 1170.95, subdivision (d)(3); (2) whether section 1170.95 permits appellant to challenge the nature of his first degree felony murder conviction or whether the proper procedural mechanism is a writ of habeas corpus; and (3) whether the jury's inability to reach a verdict on the robbery-murder special circumstance allegation is dispositive in the present context.

First, the trial court applied the more stringent, "beyond a reasonable doubt" burden of proof, which has subsequently been clarified as the proper burden of proof required during the evidentiary hearing pursuant to section 1170.95, subdivision (d)(3), as amended by Senate Bill No. 775 (2021-2022 Reg. Sess.). (Stats. 2021, ch. 551, § 2.) Second, the trial court stated it was persuaded by *People v. York* (2020) 54 Cal.App.5th 250, review granted Nov. 18, 2020, S264954, that section 1170.95 permits a petitioner to challenge the nature of his first degree felony murder conviction. Finally, the trial court did not find the jury's

inability to reach a verdict on the robbery-murder special circumstance allegation at trial dispositive. It reasoned that at the time of appellant's conviction, first degree felony murder did not require a finding of "major participation" and "reckless indifference."

As to the merits of appellant's petition for relief, the trial court discussed the factors articulated in *Banks*, *Clark,* and *Scoggins*, concluded, beyond a reasonable doubt, that appellant was a major participant in the robbery who acted with reckless indifference to human life, and denied the petition.

## SUFFICIENCY OF THE EVIDENCE

Appellant contends there is insufficient evidence to support the trial court's finding that he acted with reckless indifference. As we explain, substantial evidence supports the trial court's findings.

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

Senate Bill 1437 accomplished this task by adding three separate provisions to the penal code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before a principal may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842-843.) Second, to

5

amend the felony-murder rule, the bill added section 189, subdivision (e), which provides: "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: ¶ (1) The person was the actual killer. ¶ (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. ¶ (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Third, the bill also added section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, *supra*, 10 Cal.5th at p. 843.)

Section 1170.95, subdivisions (b) and (c) create a two-step process for evaluating a petitioner's eligibility for relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 960-962 (*Lewis*).) First, the trial court determines whether the petition is facially sufficient and appoints counsel, if requested. (§ 1170.95, subd. (b)(1)-(b)(3).) If the petition is facially sufficient, then the trial court moves on to subdivision (c), and follows the briefing schedule set forth in the statute. (§ 1170.95, subd. (c); *Lewis*, at p. 966.) After completion of this briefing, the trial court then determines whether the petitioner has made a prima facie showing he or she is entitled to relief. (*Ibid.*) If so, the trial court must issue an order to show cause and conduct an evidentiary hearing to determine whether the petitioner is entitled to relief. (§ 1170.95, subds. (c), (d)(1)-(d)(3); *Lewis*, at p. 960.)

At the evidentiary hearing, the trial court acts as an independent fact finder. The parties may rely on the record of conviction or offer new or additional evidence. (*Lewis*, *supra*, 11 Cal.5th at p. 960, citing § 1170.95, subd. (d)(3).) The prosecution bears the "burden" to prove "beyond a reasonable doubt" that the petitioner is ineligible for relief. (§ 1170.95, subd. (d)(3).) "A finding that there is substantial evidence to support a conviction for murder, . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Ibid.*, as amended by Stats. 2021, ch. 551, § 2.)

*Standard of Review*

We review the trial court's factual findings for substantial evidence. (*Jackson v. Virginia* (1979) 443 U.S. 307, 317-320; *People v. Westerfield* (2019) 6 Cal.5th 632, 713.) "[W]e review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "'We resolve neither credibility issues nor evidentiary conflicts . . . .' [Citation.]." (*Ibid.*)

*Major Participant*

Even though appellant concedes he was a major participant, we briefly address the major participant factors enumerated in *Banks*, as well as the trial court's application of them to appellant's conduct in this case because there is a "significant[] overlap" in the requirements for being a major participant in a dangerous felony and acting with reckless indifference to human life. (*Clark*, *supra*, 63 Cal.4th at pp. 614-615.) "'[T]he greater the [appellant's] participation in the felony murder, the more likely that he acted with reckless indifference

7

to human life.' [Citation.]." (*Id.* at p. 615.) Those factors include appellant's role in planning the criminal enterprise; his role in supplying or using lethal weapons; his awareness of the dangers posed by the crime; his presence at the scene; his actions or inactions in the death; and what appellant did after lethal force was used. (*Banks*, *supra*, 61 Cal.4th p. 803.)

Here, the trial court found appellant was a major participant in the crimes because he was "present when instructions were shared, labors divided, and roles defined." He entered the credit union as "one of four integral parts of the robbery team, [and] went to a specific location within the credit union per a preconceived plan." Although he did not supply the weapons used during the robbery, he "personally used a gun to control" the customers and employees inside the credit union in order to facilitate the robbery. He saw the events, heard the shots, and ran from the bank, passing the victim's body as she lay on the sidewalk.

The trial court found appellant's actions demonstrated that he knew of the "dangers inherent in this particular crime," and "directly contributed to and enhanced the danger" by "attempting to control at least two victims inside the credit union." The trial court found that appellant was a major participant.

*Reckless Indifference to Human Life*

"Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*Scoggins*, *supra*, 9 Cal.5th at p. 676, quoting *Tison, supra*, 481 U.S. at p. 157.) Reckless indifference "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the [appellant] does not

8

specifically desire that death as the outcome of his actions." (*Clark*, *supra*, 63 Cal.4th at p. 617.)

In reviewing the trial court's findings, we analyze the totality of the circumstances. (*Scoggins*, *supra*, 9 Cal.5th at p. 677.) We consider several factors such as, appellant's knowledge that weapons would be used; how the weapons were used; the number of weapons used; his proximity to the crime; his opportunity to stop the killing or aid the victims; the duration of the crime; appellant's knowledge of the killer's (accomplice's) propensity to kill; and appellant's efforts to minimize the possibility of violence during the crime. (*Ibid.*; *Clark*, *supra*, 63 Cal.4th at pp. 618-623.) "'[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient.'" (*Clark*, at p. 618, quoting *Banks*, *supra*, 61 Cal.4th at p. 803.)

First, appellant acknowledged in his confession to police that he and the other three men had firearms. One of appellant's accomplices, Adams, used a shotgun. Appellant also knew that his firearm was loaded. As we stated in our prior opinion, "appellant concedes that his accomplice, Mitchell, shot and killed [Christine O.] while appellant was personally using a gun to control those inside the credit union and the other two accomplices were robbing the tellers at gun point." (*Owens*, *supra*, B130064 at pp. 6-7.)

This case is unlike *Scoggins* and *Clark* in which the defendants were unarmed, not present at the scene, did not know their accomplices were armed or, as in *Clark*, did not know the accomplice was carrying a loaded gun. (See *Scoggins*, *supra*, 9 Cal.5th at pp. 677-678; *Clark*, *supra*, 63 Cal.4th at p. 613.) This undercuts appellant's claim that the evidence is insufficient to support the trial court's finding of reckless indifference.

Second, the plan to commit the robbery of the credit union during normal business hours when customers would likely be present, posed obvious and extreme risks of lethal violence. We recognize that our Supreme Court has emphasized that the planning of or participation in a felony, even one in which the perpetrators were armed, is not by itself sufficient to show reckless indifference. (*Scoggins*, *supra*, 9 Cal.5th at p. 682; *Clark*, *supra*, 63 Cal.4th at pp. 613-623.) However, the degree of risk to human life is crucial to the analysis. (*Scoggins*, at p. 682.)

This robbery posed a particularly high risk of violence because it involved multiple robbers with loaded firearms taking over a bank during normal business hours when approximately 20 people were present. While the robbery was not prolonged, the violence ensued quickly. The trial court found, "this risk – and danger – was the very reason [appellant] was asked to be a fourth gunman in the first place."

Appellant contends that he was just the "low man on the totem pole" and could not have known Mitchell would become violent or harm anyone. But even if appellant did not know of Mitchell's proclivity for violence *before* the robbery, it is reasonable the trial court could have inferred that knowledge became evident to appellant *during* the robbery. (See *Clark*, *supra*, 63 Cal.4th at p. 621; *Scoggins*, *supra*, 9 Cal.5th at p. 681.) Moreover, appellant's own actions increased the degree of risk to human life when he pointed a gun at two victims and cocked his weapon when they did not immediately comply with his orders.

Considering the totality of the circumstances, we conclude that substantial evidence supports the trial court's finding that appellant acted with reckless indifference to human life.

Appellant resists this conclusion with several unmeritorious arguments. First, the trial court did not wrongly conclude that he acted with reckless indifference because it "blended [the] facts pertaining to major participation [and] reckless indifference."

Second, appellant contends the trial court's finding that he participated in "more than an ordinary robbery is a matter of characterization rather than objective indicia of culpability." (Bold and capitalization omitted.) We disagree. The trial court engaged in a fact-intensive, individualized inquiry to determine appellant's culpability. (See *Scoggins*, *supra*, 9 Cal.5th at p. 683.)

This was not a "'garden-variety armed robbery.'" (See *Clark*, *supra*, 63 Cal.4th at p. 617 & fn. 74.) Indeed, the trial court opined that the crime "was so outrageous," it would only support a determination that appellant acted with reckless indifference.

Third, the standard for reckless indifference to human life has both a subjective and an objective element. (*Scoggins*, *supra*, 9 Cal.5th at p. 677, citing *Clark*, *supra*, 63 Cal.4th at p. 617.) Recklessness is not determined "merely by reference to a defendant's subjective feeling that he . . . is engaging in risky activities. Rather, recklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.'" (*Clark*, at p. 617.)

Here, the trial court was not limited to considering only appellant's self-serving statements to determine his mental state, particularly when those statements were made to police when appellant had an incentive to minimize his involvement. Because intent can seldom be proven by direct evidence, it typically is inferred from the circumstances. (*People v. Smith* (1998) 64

11

Cal.App.4th 1458, 1469; *People v. Edwards* (1992) 8 Cal.App.4th 1092, 1099.)  The trial court properly considered all of the evidence in determining appellant acted with reckless indifference.

Fourth, appellant contends that although the trial court applied the beyond a reasonable doubt standard at the hearing, it "effectively revived" the substantial evidence standard by citing to cases that applied the *Banks*/*Clark* factors in the context of habeas corpus proceedings.  This contention is meritless because the trial court addressed those cases in the context of discussing the *Banks*/*Clark* factors.  More importantly, the trial court specifically addressed those cases and distinguished them because appellant cited them for support.

Finally, the trial court did consider appellant's youth as a factor in its *Banks*/*Clark*/*Scoggins* analysis.  The trial court expressly stated it had "factored into the calculus" appellant's age of 19 years old when the crimes were committed.

Substantial evidence supports the trial court's finding, beyond a reasonable doubt, that appellant was a major participant who acted with reckless indifference to human life.  The trial court properly denied appellant's petition for resentencing.

*Senate Bill No. 775*

After appellant's section 1170.95 full evidentiary hearing, the Legislature modified section 1170.95 both substantively and procedurally by the passage of Senate Bill No. 775 (S.B. 775).  As it may have application to this case, section 1170.95 subd. (d)(3) now says that the Evidence Code shall apply at such hearing.  This may mean that, absent some exception, hearsay contained in probation, pre-sentence reports, appellate opinions/orders, and

12

other documents, are not now admissible at a section 1170.95 hearing.  There is no statement in S.B. 775 indicating that the procedural change is to be applied retroactively on appeal.  The preclusion of hearsay is an ordinary rule of evidence.  This aspect of the new law is a procedural change.  Changes in criminal procedural rules, as declared by the courts, generally speaking, are not applied retroactively.  (See, e.g., *In re Moore* (2005) 133 Cal.App.4th 68, 75, relying on *Teague v. Lane* (1989) 489 U.S. 288, 301; *Schriro v. Summerlin* (2004) 542 U.S. 348.)  The same is true for California statutory changes in criminal procedural rules.  As the Legislature has said, since 1872, "No part of it [the Penal code] is retroactive, unless expressly so declared."  (§ 3; *People v. Alford* (2007) 42 Cal.4th 749, 753; see also *Tapia v. Superior Court* (1991) 53 Cal.3d 282 [procedural change in criminal rules by initiative not retroactive].)

The word, "retroactivity" and the name "Estrada" (*In re Estrada* (1965) 63 Cal.2d 740) have become the appellate words "du jour."  But neither is a talisman precluding independent analysis and in whose presence extant statutory and other decisional law fade away and disappear.  (See *Coolidge v. New Hampshire* (1971) 403 U. S. 443, 461.)  We need not definitively rule on the retroactivity issue because denial of the instant petition did not result from the consideration of prejudicial hearsay.  As Justice Frankfurter has said:  "Wise adjudication has its own time for ripening."  (See *Maryland v. Baltimore Radio Show* (1950) U.S. 912, 918.)

Senate Bill No. 775 does not have any impact on the outcome of this appeal.  First, there was no objection to the pre-sentence report which contained hearsay.  There is a good reason why.  Appellant's attorney wanted the trial court to consider the

13

hearsay statements. There was no evidentiary "bomb shell" crucial to the People's case in the report. To the contrary, the hearsay was favorable to him. The hearsay statements show that appellant was not recruited to participate in the planned robbery until 90 minutes before it happened. He was only invited to participate at the last minute because the fourth conspirator was a "no show." This, of course, theoretically diminishes his over-all culpability. He had no part in planning or logistics. In his hearsay explanation, he attempted to minimize his involvement. He was asked to aid the robbery as just a "helper" and supplied a firearm to control the people in the bank. As he phrases it on appeal, he was "low man on the totem pole."

Second, there is nothing unfavorable to appellant in any hearsay documents that the trial court did not already know from the other admissible evidence. Thus, appellant suffered no prejudice by the court's consideration of any hearsay evidence. Admission of this evidence did not result in an unfairness. There is no miscarriage of justice and we are not of the opinion that a different result would obtain upon retrial of the petition. (Cal. Const., art. VI, § 13.)

### DISPOSITION

The order is affirmed.

<u>CERTIFIED FOR PUBLICATION</u>.


YEGAN, acting P. J.


I concur:


PERREN, J.


14

TANGEMAN, J., Concurring:

I concur in the disposition because the admissible evidence demonstrates that appellant was a major participant who acted with reckless indifference to human life. I do not join in the majority's analysis of whether the hearsay provisions of Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) (Senate Bill 775) are retroactive. The majority's pronouncements on this issue are dicta because the appellant did not raise Senate Bill 775. This court sent a Government Code section 68081 letter asking whether it should discuss Senate Bill 775. Appellant responded in supplemental briefing that he does not claim Senate Bill 775 applies in this case. As the majority recognizes, Senate Bill 775 has no impact on the outcome of the appeal.

In any event, it is unresolved whether the evidentiary provisions of Senate Bill 775 apply in an appeal from a completed resentencing hearing. Because the evidentiary portions of Senate Bill 775 "clarify[] the discussion" in *People v. Lewis* (2021) 11 Cal.5th 952, 970-972 (Sen. Bill No. 775, § 1(d)), they may come within the rule that legislative clarification of existing law applies to conduct that precedes its enactment. (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922.) In addition, cases have reached different conclusions on the retroactivity of so-called procedural changes. (Compare *People v. Cervantes* (2020) 55 Cal.App.5th 927 [limitations on admission of evidence not retroactive] with *People v. Burgos* (2022) 77 Cal.App.5th 550, 564-568 [procedural change in bifurcating trial of enhancement retroactive] and *Tapia v. Superior Court* (1991) 53 Cal.3d 282 [portions of Prop. 115 including admission of

1

hearsay at preliminary hearing, apply to future court proceedings for alleged crimes committed prior to enactment].)[1]

The majority's hostility to the requirements of *In re Estrada* (1965) 63 Cal.2d 740 is evident from its use of the phrase "appellate words 'du jour'" to describe "retroactivity" and "Estrada." (Maj. opn. *ante*, at p. 13.) The only purpose served by the majority's dicta is to discourage trial courts from considering this unresolved issue in the first instance, and litigants from raising and briefing the issue on appeal from a record that presents it. I would reserve analysis of the retroactivity of Senate Bill 775 for a case that squarely presents the issue.

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

---

[1] The majority misapprehends *Tapia*, *supra*, 53 Cal.3d 282. *Tapia* held that the provisions of Proposition 115 that increased punishment or created new crimes could not be applied to completed conduct because the effect would be "retroactive." In that context, the Court concluded the provisions that related to the conduct of court proceedings, such as allowing hearsay at preliminary hearings, were not "retroactive," and were properly *prospectively* applied to future court proceedings, even for alleged crimes committed before the proposition's enactment.

2

James K. Voysey, Judge
Superior Court County of Santa Barbara
_____

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.